Susan A. EASTMAN, Plaintiff–Appellant,

v.

The UNIVERSITY OF MICHIGAN; The Board of Regents of the University of Michigan; James J. Duderstat; Neal D. Nielsen; Virginia Latta Smith; Paul W. Brown; James L. Waters; Deane Baker; Nellie M. Varner; Philip H. Power; Shirley McFee; Alfred A. Stuart; Paul W. Wright; Virginia Nordby; Sandra M. Dunn, Defendants–Appellees.

No. 92–2424.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1993.

Decided July 25, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 8, 1994.

Mark Granzotto (argued), Neal Bush, Detroit, MI, Thomas W. Kielty, Sacramento, CA (briefed), for plaintiff-appellant.

Cindy H. Wilder (briefed), Debra A. Kowich (argued), University of Michigan, Office of Gen. Counsel, Ann Arbor, MI, for defendants-appellees.

Before: BOGGS and NORRIS, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Susan Eastman brought this § 1983 suit against the University of Michigan and various of its officers, alleging that the University's residency requirement for in-state tuition purposes violated the Equal Protection Clause. The district court, adopting the magistrate judge's report and recommenda-tion, granted defendants' motion for summary judgment. Because the record is insufficiently developed for us to determine conclusively what the University's residency rules are, we reverse the district court's order and remand for further proceedings.

## I

Eastman attended the University from September 1980 through May 1982. During that time, the University classified her as a "non-resident" student. In September 1982, she left school and moved to California with her husband to look for work. She had not yet graduated. Eastman, who is originally from Pennsylvania, asserts that in 1989 she and her husband, who is from Nebraska, decided to return to Michigan and make it their permanent home. While living in California, Eastman applied in September 1989 to the University's school of art and was readmitted as a non-resident student in October 1989 for winter term 1990. In November 1989, Eastman's husband received a job offer from a Michigan law firm. Eastman says that, without that offer, they would not have returned to Michigan. In January 1990, when the University's winter 1990 term began, Eastman and her husband moved to Michigan, after having resided in California and, briefly, New York for the preceding eight years. Eastman's husband worked for the law firm from April 1990 until September 1990. He then clerked for a federal district judge in Michigan, beginning in September 1990.

On September 24, 1990, the University received Eastman's Application for Resident Classification for University Purposes for fall term 1990. At that time, Eastman had been physically present in Michigan for about nine months (from January through September 1990). On November 21, the University informed her that it was "unable to render a decision on the merit" of her application because she had not "physically resided in Michigan on a continuous basis for at least one year immediately preceding the first day of [fall term 1990 classes]," as required by the University's Residence Regulations. Eastman appealed the assistant registrar's decision to the University's Residency Ap-

peal Committee. The Committee found that she had failed to meet the requirement of residence for one year and therefore upheld the assistant registrar's "decision not to rule on the merit of [her] case." Eastman then filed suit in September 1991. She seeks to have part of the regulations declared unconstitutional and requests an injunction ordering the University to review the merits of her residency application.[1]

The Residence Regulations, adopted by the University in 1974, define a non-resident as "one whose domicile is elsewhere." The Regulations contain the presumption that "normally a student comes to the University of Michigan for the primary or sole purpose of attending the University rather than to establish a domicile in Michigan." Therefore, the Regulations provide that a student enrolled as a non-resident shall remain classified as a non-resident throughout her attendance as a student unless she demonstrates that she has established a Michigan domicile. The Regulations further state that no student shall be eligible for classification as a resident unless she is "domiciled in Michigan *and* has resided in Michigan continuously for not less than one year immediately preceding the first day of classes of the term for which classification is sought" (emphasis added). To be considered domiciled in Michigan, the student must be in "continuous physical presence" in the state and intend to make Michigan her "permanent home, not only while in attendance at the University, but indefinitely thereafter as well." The Regulations do not indicate whether resident status, if granted, is applied retroactively to the time that domicile was established.

The assistant registrar, in his affidavit, stated that "[i]n reviewing a student's residency status, [he] first determine[s] whether the student came to the State of Michigan for the sole or primary purpose of attending the University rather than to establish a domicile in Michigan." The assistant registrar bases his decision on the student's Application for Admission, her Application for Resident Classification, and "information obtained through verification of the information pro-

vided by the student." A student who is determined not to have come to the state for the sole or primary purpose of attending the University is considered a resident and is not required to meet the one-year residency requirement. The assistant registrar stated that, in Eastman's case, he concluded that she was a non-resident when admitted because she had applied, been admitted, and had accepted her admission before her husband had interviewed for and accepted a job in the state. He therefore determined that she was ineligible for classification as a resident until she had been in Michigan for one year.

After some discovery and a hearing before the magistrate judge, the magistrate judge issued a report and recommendation. The district court adopted the report and recommendation and granted summary judgment to defendants. Eastman appeals to this court, arguing that summary judgment was improper because there were genuine issues of material fact and because she had not been afforded adequate discovery.

## II

■ We review the grant of summary judgment *de novo*, making all reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact exists. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Eastman contends that the University's regulations violate the Equal Protection Clause of the Fourteenth Amendment. We evaluate such a challenge under a "rational basis" standard of review. To pass constitutional muster, the regulations must bear a rational relationship to a legitimate state objective. *Martinez v. Bynum*, 461 U.S. 321, 328 n. 7, 103 S.Ct. 1838, 1842 n. 7, 75 L.Ed.2d 879 (1983); *Hooban v. Boling*, 503 F.2d 648, 650 (6th Cir. 1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975).

■ A brief discussion of the related concepts of domicile and residence may be useful before examining the constitutionality of the University's regulations. Generally, an individual's "domicile" is his "true, fixed,

1. Eastman apparently graduated in August 1991 and has since moved from Michigan.

and permanent home and principal establishment." It is the place to which he returns whenever he is absent. *Black's Law Dictionary* 484 (6th ed.1990). *See also Martinez,* 461 U.S. at 331, 103 S.Ct. at 1844. "Residence," in contrast, requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently. *Black's Law Dictionary* at 1308–09; *Martinez,* 461 U.S. at 330–31, 103 S.Ct. at 1843–44. Thus, domicile is an individual's permanent place of abode where he need not be physically present, and residence is where the individual is physically present much of the time. An individual consequently may have several residences, but only one domicile.

Confusion results when, for example, "bona fide resident" is used in place of "domiciliary," under the definitions above, as some courts (including this one) have done. *See, e.g., Hooban,* 503 F.2d at 651; *Vlandis v. Kline,* 412 U.S. 441, 453, 93 S.Ct. 2230, 2237, 37 L.Ed.2d 63 (1973). The University's Regulations equate "resident" with "domiciled." Thus, the Regulations state that a "resident student is defined as a student domiciled" in Michigan and that a "non-resident is defined as one whose domicile is elsewhere." Bearing in mind the distinction between "domicile" and "residence," we now turn to the issues in this case.

██ It is perfectly acceptable for a state to provide certain services, such as higher education, to its own domiciled residents on a preferential basis, by means of lower tuition rates, for example. *Vlandis,* 412 U.S. at 453–54, 93 S.Ct. at 2237; *Hooban,* 503 F.2d at 651. "A state has a 'legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents [*i.e.,* domiciliaries] to attend such institutions on a preferential tuition basis.'" *Hooban,* 503 F.2d at 651 (quoting *Vlandis,* 412 U.S. at 453, 93 S.Ct. at 2237). Thus, the question here is whether the means employed—the University's regulations—bear a rational relationship to the stated ends.

██ In assessing residency requirements such as those found in the University's Residence Regulations, courts distinguish between domicile (usually called "bona fide residence") requirements and durational requirements imposed on bona fide domiciliaries. A state legitimately may impose on out-of-state individuals seeking the preferred treatment accorded only to bona fide domiciliaries a durational residence requirement as a valid means of demonstrating a bona fide domicile in the state. *See Vlandis,* 412 U.S. at 452 n. 9, 93 S.Ct. at 2236 n. 9. Thus, a state may "'establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents [*i.e.,* domiciliaries] of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates.'" *Martinez,* 461 U.S. at 327, 103 S.Ct. at 1842 (quoting *Vlandis,* 412 U.S. at 453–54, 93 S.Ct. at 2237). A domicile, or bona fide residence, requirement:

> appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause.... A bona fide residence requirement simply requires that the person *does* establish residence before demanding the services that are restricted to residents.

*Martinez,* 461 U.S. at 328–29, 103 S.Ct. at 1842–43 (emphasis in original).

██ A durational requirement imposed on a domiciliary or bona fide resident, however, would run afoul of the Equal Protection Clause. Because domicile can be obtained without the passage of any particular period of time, such a requirement imposed on one who has true domicile or bona fide residence in the state would not advance the legitimate state interest served by such a requirement—restricting preferential tuition rates only to domiciliaries. The requirement therefore would lack a rational basis and violate the Equal Protection Clause.

Although the passage of a certain period of time, such as a year, may be relevant as evidence on the question of domicile, it cannot be dispositive. Thus, if the University's

registrar requires some individuals to have a physical residence in Michigan for one year before considering evidence on their domicile or bona fide residence status, and also refuses to give them retroactive credit for residence at the time that his investigation, whenever conducted, shows that domicile or bona fide residence began, then the policy would be unconstitutional as an impermissible durational requirement imposed on domiciliaries. If, on the other hand, the registrar determines, based on all the evidence, whether the student is a domiciliary or bona fide resident at the time of admission, then the policy would not be unconstitutional, even if a mistake might be made in an individual instance. Under the latter policy, the registrar would have to allow for retroactive application of the domicile status determination as of the time that the status was actually achieved. Also, the registrar would have to be open to a new decision if information arose between the initial application and the expiration of one year.

■ Given the facts as developed in the record in this case thus far, it is not clear if the University's rule is a bona fide residence or domicile requirement, or an impermissible durational requirement imposed on those who are bona fide domiciliaries. The Residence Regulations require a student seeking resident classification to be "domiciled in Michigan *and* [have] resided in Michigan continuously for not less than one year" (emphasis added). The Regulations thus may be read to require both domicile and one year's residence. In addition, the assistant registrar's letter to Eastman denying her resident status application states that "[i]n order for an individual *to apply* for resident status consideration, it is necessary for the applicant ... to have been physically present in the State of Michigan on a continuous basis for at least one year preceding the first day of classes of the term for which reclassification is sought" (emphasis added). No exception appears to be made for those students who are bona fide domiciliaries. Under such a reading, the Regulations would be an impermissible durational requirement imposed on a bona fide domiciliary.

Further, the assistant registrar informed Eastman that the University was "unable to render a decision on the merit of [her] application," and the Residency Appeal Committee upheld that decision. Yet, the assistant registrar, in his affidavit, states that he makes an initial determination on an applicant's resident (*i.e.,* here, domiciliary) classification. The magistrate judge agreed that the assistant registrar's decision was "on the merits," but concluded that there was no contradiction between the two positions because the latter decision is made to determine if the applicant is in the state primarily for an education. At the June 1992 hearing on the motion for summary judgment, though, the University's lawyer stated that the "one year requirement is the one factor that the University can look at to help it to decide whether these students really have the intent or not [to be domiciliaries]." She also conceded that the one-year requirement served as a "screening" device. Thus, there is a factual dispute as to the manner in which the assistant registrar determines which students must satisfy the one-year residence requirement. That factual dispute is material because resolution of it will show whether the University's regulations, as applied, are a bona fide residence requirement or an impermissible durational requirement imposed on bona fide domiciliaries.

In order to determine precisely what is the University's rule regarding its residency requirements, we reverse the district court's order granting summary judgment to defendants. Additional discovery may be necessary to resolve this issue. The scope of any further discovery is committed to the sound discretion of the district court.

### III

Accordingly, the order of the district court is **REVERSED** and this case **REMANDED** for further proceedings.