**Joseph NAHAN, Plaintiff,**

v.

**PAN AMERICAN GRAIN MFG. CO. INC., et al., Defendant.**

**Civil No. 94–1014(DRD).**

United States District Court,
D. Puerto Rico.

June 13, 1997.

Harry A. Ezratty, San Juan, PR, for Plaintiff.

Jose F. Sarraga–Venegas, San Juan, PR, Jose A. Fernandez–Paoli, Fernando J. Valderrabano–Marina, Santurce, PR, for Pan American Grain Mfg. Co., Inc.

Roberto Lefranc–Romero, Jose A. Fernandez–Paoli, Maria Eugenia Rodriguez–Lopez, Santurce, PR, for El Fenix de Puerto Rico, Inc.

Jose F. Sarraga–Venegas, San Juan, PR, for ITB Zorra.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before this Court are Defendant's Summary Judgment Motions (Dockets No. 18, 24, 34, 35), and Plaintiff's Replies (Dockets No. 22, 27, 62).[1] The matter had been referred to the Magistrate for a Report and Recommendation by U.S. District Judge, Hon. Salvador E. Casellas. The Honorable Magistrate Judge, Justo Arenas, issued a Report and Recommendation proposing dismissal on January 16, 1996 (Docket No. 57).[2] Plaintiff objected to the Report and Recommendation (Docket No. 58); Defendant also objected to the Report and Recommendation as to certain facts and requested reconsideration (Docket No. 60); Defendant further replied to Plaintiff's Objections to the Magistrate Report and Recommendation (Docket No. 62). The Magistrate Judge issued an Amended Report and Recommendation (Docket No. 71) wherein, after holding a hearing, he reaffirmed his recommendation of dismissal. Plaintiff objected to the new recommendation (Docket No. 72). Oral arguments were heard by the District Court (Docket No. 70).

The principal issue in the instant case is whether or not Plaintiff is exempt from coverage under the Maritime Laws of the United States and the Jones Act, 46 U.S.C.App. § 688, because of potential coverage under the Puerto Rico's Workman's Accident Compensation Act under the doctrine of *Fonseca*

---

1. The case was transferred to the undersigned on July 18, 1996 (Docket No. 65).

2. The Hon. Magistrate originally recommended the motion to be denied (Docket No. 36); later again recommended denial of the request (Docket No. 43).

*v. Prann,* 282 F.2d 153 (1st Cir.1960) and subsequent judicial interpretations.[3]

Notwithstanding the holding of a hearing by the Magistrate Judge, the Court notes that the case is at the summary judgment level, and hence, the evidence must be examined "drawing all reasonable inferences helpful to the party resisting summary judgment," *Cortés–Irizarry v. Corporación Insular De Seguros,* 111 F.3d 184, 187 (1st Cir. 1997). Further, at the summary judgment stage there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood ..." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987); *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995) ("No credibility assessment may be resolved in favor of the party seeking summary judgment"). *See also Cortés–Irizarry,* 111 F.3d at 192 (citing *Greenburg,* 835 F.2d at 936). The facts must be considered as heretobefore stated because on appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopt their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The standard has been revisited by the First Circuit Court of Appeals on several occasions, *McCarthy v. Northwest Airlines, Inc.* 56 F.3d 313, 315 (1st Cir.1995) (collecting relevant cases). To defeat summary judgment, the resisting party must show the existence of "a trial worthy issue as to some material facts." *Cortés–Irizarry,* 111 F.3d at

187. A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Garside v. Osco Drug Inc.,* 895 F.2d 46, 48 (1st Cir.1990). "An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés– Irizarry,* 111 F.3d at 187. Defendant, of course, must not only show that there is "no genuine issue of material facts", but also, that "they are entitled to judgment as a matter of law." *Vega–Rodriguez,* 110 F.3d at 178.

The Court, therefore, examines the facts in the light "most congenial" to Plaintiff. Plaintiff, Joseph Nahan, was a resident of Seattle, Washington, prior to October 1993. Defendant, Pan American Grain Mfg. Co. is a corporation organized and doing business under the laws of Puerto Rico with its principal place of business on the island.

Defendant, Pan American Grain Mfg. Co., is the owner-operator of the Vessel ITB Zorra registered with the United States Coast Guard in Miami, Florida. The vessel is registered in Florida as a consequence of the Coast Guard closing of its vessel documentation office in San Juan and transfer of said office to Miami, Florida.

Plaintiff was hired and began working aboard the ITB Zorra in the Port of Oregon on August 20, 1993. The vessel subsequently sailed to Sacramento, California, where Plaintiff signed the shipping articles at the Port of Sacramento, California. The shipping articles indicate that the vessel was destined from "Sacramento to San Juan, Puerto Rico, and any other ports designated by the owner." The articles are silent as to the identification of the owner of the vessel, the operating company and the address or principal place of business of said operator.

The vessel spends over fifty percent of the year in its main port in Guaynabo, P.R.[4] The vessel hailing port is Guaynabo, P.R.,

**3.** The Federal Relations Act at 48 U.S.C. § 749 "gave Puerto Rico the power to supplant federal maritime law in favor of PRWACA for covered accidents involving seamen that occur in PR's local waters." *Pérez de la Cruz v. Crowley Tow-*

*ing & Transp. Co.,* 807 F.2d 1084, 1087 (1st Cir.1986).

**4.** Although this is an undisputed fact—there is no evidence that Plaintiff knew of this fact.

and the name "Guaynabo" is printed on the stern of the vessel. The presence of ITB Zorra in Guaynabo, P.R. was thus not a temporary visit. Defendant, Pan American Grain Mfg. Co., Inc. insured Plaintiff and all the crews of the vessel ITB Zorra under PRWACA pursuant to § 19 of the Act. Plaintiff was also covered under the State Insurance Fund for the time he worked in Portland, Oregon.

On October 3, 1993, five days after arrival of the vessel ITB Zorra in Guaynabo, P.R., while the vessel was moored, in the course of his employment, Plaintiff Joseph Nahan suffered an accident in the process of installing a ladder being used from the vessel to the Pan American pier. Plaintiff suffered severe injuries which caused hospitalization from the date of the accident until December 18, 1993, when he refused further treatment.

■ As stated before the issue in the present case is whether plaintiff is a "Fondo type" or "Lastra type" [5] seaman exempt from federal maritime law.

The jurisprudence has generally set forth four factors for exemption:

1. That the employer is duly authorized by the Commonwealth of Puerto Rico to do business in Puerto Rico.

2. That the employer insured its employees under PRWACA.

3. That the accident occurred within territorial waters of Puerto Rico.

4. That the seaman was a resident of Puerto Rico at the time of the accident. *Lusson v. Carter,* 704 F.2d 646, 650 (1st Cir.1983); *Pérez de la Cruz v. Crowley Towing & Transp. Co.,* 807 F.2d 1084 (1st Cir.1986).

There is no controversy that the first three criteria are met. However, because the PRWACA does not automatically apply to every injury that occurs in Puerto Rico, *Lusson v. Carter,* 704 F.2d at 650, and because "entry into Puerto Rican territorial waters for a temporary visit" fails to produce an

exemption from the federal maritime laws, *Middleton v. Crowley Towing,* 948 F.2d 1285, 1992 A.M.C. 717, 719 (5th Cir.1991), the Court must carefully scrutinize the facts and the law as to the residence of plaintiff in this particular case.

■ The distinction in the concepts of "domicile" and "residence" [6] was expressed in the case of *Eastman v. University of Michigan,* 30 F.3d 670, 672, 673 (6th Cir.1994).

> Generally, an individual's **'domicile'** is his 'true, fixed, and permanent home and principal establishment.' It is the place to which he returns whenever he is absent. Black's Law Dictionary 484 (6th ed.1990). *See also Martinez [v. Bynum],* 461 U.S. [321], 331, 103 S.Ct. [1838,] 1844, 75 L.Ed.2d 879 [ (1983) ]. **'Residence,'** in contrast, requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently. Black's Law Dictionary at 1308–09; *Martinez,* 461 U.S. [at] 330–31, 103 S.Ct. at 1843–44. Thus, **domicile** is an individual's permanent place of abode where he need not be physically present, and **residence** is where the individual is physically present much of the time. An individual consequently may have several **residences,** but only one **domicile.** (Emphasis added)
>
> *Eastman v. University of Michigan,* 30 F.3d at 672–73.

See also the recent case of *Bergersen v. Commissioner of Internal Revenue,* 109 F.3d 56, 60 (1st Cir.1997), defining residency as a place where one establishes a "residential base, planning to remain indefinitely or at least for a substantial period."

■ Since residency "requires both physical presence and intention to remain some indefinite period of time," *Eastman,* 30 F.3d at 672, the Court examines the facts present on the record using said substantive standard considering summary judgment criteria.

**5.** "Fondo" is a common name used in Puerto Rico in reference to the "State Insurance Fund." Accident of a seaman exempt from federal maritime laws occurring within navigable waters of Puerto Rico. *Lastra v. New York & Porto Rico SS Co.,* 2 F.2d 812 (1st Cir.1924). An accident of a seaman occurring within the navigable waters of

Puerto Rico may exempt the application of federal maritime laws.

**6.** The parties sometimes use the term indistinctively (*See* Docket No. 22).

The Court concludes that there are genuine issues of material facts which preclude disposing of the issue.

Defendant has proffered evidence that Plaintiff was hired as a permanent employee of a manufacturing company providing for year round work. However, Plaintiff has denied that he knew he was coming to P.R. to work on a permanent basis. Defendant alleges that Plaintiff informed that he was to move his sailboat from the west coast to P.R. enabling him to live in the vessel in Puerto Rico. Plaintiff denies said fact and has produced contractual evidence to the contrary. Evidence was produced that Plaintiff had knowledge that all the seamen aboard the vessel ITB Zorra were offered permanent jobs in Puerto Rico as was Plaintiff. Further, Plaintiff paid a seven-day wage commission to an employment agency, surely, according to Defendant, for other than merely a "short duration employment." Plaintiff, on the other hand, denies any knowledge of the "permanent job" in Puerto Rico and states under oath that he was told "this trip would take him to P.R. and then New Orleans" ( Docket No. 22). There are other circumstantial facts on this matter that point toward residence in Puerto Rico, as well as evidence to the contrary.[7] The Court recognizes that this matter may turn out to be extremely close since the injury occurred only five days after the arrival of the vessel to Puerto Rico.[8]

The Court further reminds the parties that since the status of the case is at the summary judgment level and the concept of residence, examined by the Court, is imbued with elements of intent, particularly "subjective intent," *Bergersen,* 109 F.3d at 60, the Court is thus guided by the appellate court to proceed with caution when there exist "issues of intent." *Coll v. P.B. Diagnostic Sys., Inc.,* 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equip. Corp.,* 846 F.2d 103,

109 (1st Cir.1988); *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983); *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988).

Finally, the Court notes that the Honorable Magistrate Judge held a hearing in an attempt to resolve the conflicting issues of fact as to the residency of Plaintiff to determine potential exemption under the Federal Maritime Law as mandated by Federal Relations Act, 48 U.S.C. §§ 748, 749, 821.[9] The Court, however, was at the summary judgment stage and the issue of residence was a "mixed question of law and fact" ("applying a legal label, refracted into a set of legal criteria, to unique set of facts"), which is to be determined by the trier of facts, in this case the jury. *Bergersen,* 109 F.3d at 61.

Because there are genuine issues of material facts in controversy as to the residence of Plaintiff in Puerto Rico, and because there are elements of "subjective intent" present as to the residency of Plaintiff in Puerto Rico, the summary judgment request is DENIED. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

**A final discovery/scheduling conference is set for June 30, 1997 at 4:00 P.M.**

IT IS SO ORDERED.

---

7. Allegedly the crew was retained for a permanent job in Puerto Rico, the vessel's name is "Guaynabo," the vessel remains in Guaynabo, P.R. over 50% of the time.

8. The fact that Plaintiff may not have known of Puerto Rico's exemption for accidents occurring in local waters is immaterial since Plaintiff is presumed to have knowledge of the federal law.

9. The Honorable Magistrate Judge originally held that "I find the facts present plausible but conflicting inferences as to the issue of Joseph Nahan's residence" (Opinion and Order, Docket No. 43, p. 5).