**WALBRO CORPORATION, individually and as Subrogee of Dennis Allen Scharich, by Cathy A. Schenk, next friend and as Subrogee of Cathy A. Schenk and Michael Schenk, Plaintiff–Appellee/Cross-Appellant,**

v.

**AMERISURE COMPANIES; Thomas D. Scharich, as Co-conservator of the Estate of Dennis Allen Scharich, Defendants–Appellees,**

**Michael Schenk; Cathy A. Schenk, Defendants,**

**Titan Insurance Company, Defendant–Appellant/Cross-Appellee.**

**Nos. 96–2109, 96–2192.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1997.

Decided Jan. 16, 1998.

James F. Troester (argued and briefed), Smith, Bovill, Fisher, Meyer & Borchard, Saginaw, MI, for Defendant–Appellee Thomas D. Scharich in No. 96–2192.

Janet Callahan Barnes (argued and briefed), Mark S. Torigan, Roger F. Wardle, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for Defendant–Appellee Amerisure Companies.

Fred L. Borchard, James F. Troester, Smith, Bovill, Fisher, Meyer & Borchard, Saginaw, MI, for Defendant–Appellant/Cross–Appellee Titan Insurance Company.

Peter S. Shek (argued and briefed), Saginaw, MI, for Plaintiff–Appellee/Cross–Appellant Walbro Corporation.

Before: KENNEDY, JONES, and CLAY, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

Defendant Titan Insurance Company ("Titan") appeals and plaintiff Walbro Corporation ("Walbro") cross-appeals the District Court's orders granting summary judgment in this insurance coverage dispute. Plaintiff Walbro sued Thomas Scharich, in his capacity as co-conservator of The Estate of Dennis Scharich, Amerisure Insurance Companies ("Amerisure"), and Titan, seeking reimbursement of payments it had advanced to cover the medical expenses of Dennis Scharich, who was injured in a motor vehicle accident. The District Court concluded that defendant Titan was solely responsible for the coverage of these expenses. Walbro and Titan appealed, arguing that the expenses should be shared equally between Titan and Amerisure. Walbro also appeals the District Court's order granting summary judgment against it on its claim for reimbursement from Thomas Scharich, as co-conservator of the Estate of Dennis Scharich. For the following reasons, we find that Titan and Amerisure are equally responsible for Dennis Scharich's medical expenses. Therefore, we reverse the District Court's order granting summary judgment in

favor of Amerisure and remand to the District Court for entry of appropriate judgments.

## I. Facts

The case originates in a motor vehicle accident in Bay County, Michigan on July 18, 1993 that injured nine-year-old Dennis Allen Scharich. The central question that we consider is which party or parties are responsible for Dennis Scharich's medical bills that resulted from this accident. Dennis Scharich is the son of Thomas Scharich and Cathy Schenk, who were divorced in June of 1990. In its judgment of divorce, the Circuit Court for the County of Saginaw granted Thomas and Cathy joint legal and physical custody of their minor child, required court approval before either parent moved the child's domicile outside the State of Michigan, and gave both parties the legal right to share in any major decisions affecting their child until he reached the age of eighteen years. The father was ordered to pay $20.00 per week in child support and to maintain hospital, medical, and surgical insurance for his son's benefit. Each parent, however, had the right in alternate years to declare their child as a dependant for tax purposes.

The parents shared custody of their son on a flexible basis without a rigid schedule.[1] Thomas Scharich lived in Bay City and Cathy, who married Michael Schenk in September of 1991, lived in Vassar, Michigan. The flexibility of their custodial schedule allowed the parents to accommodate Dennis' participation in sports and school activities, which occurred in Bay City. Thomas Scharich testified at deposition that they "tried to work out an every other weekend thing or every other week." Cathy Schenk testified at deposition that Dennis spent alternating weeks with his mother and father. She also stated that their custody arrangement was "a really open situation," that could change from week to week depending on the families' situations. Both parents maintained a room with toys, clothes, and toiletries for Dennis in their separate homes. In addition, Dennis' paternal grandmother, Dorothy Scharich, often looked after him and kept a bedroom stocked with clothes and toys for her grandchildren. Dennis attended church each week with whoever had custody.

During July of 1993, Dennis' parents were alternating custody on a weekly basis. Cathy Schenk was scheduled to have had custody on the weekend that the accident occurred, but Thomas Scharich had arranged to have custody that weekend because his brother, Timothy Scharich, was visiting from Indiana. Dennis was a passenger in a car driven by Timothy Scharich's wife, Linda Mae Scharich, when the motor vehicle accident occurred at the intersection of Amelith and Mackinaw Roads in Bay County, Michigan. According to the police report, Linda Mae Scharich stopped briefly at a stop sign, but she then pulled in front of an oncoming pick-up truck, causing the collision.

Dennis sustained injuries that required hospitalization and extensive medical treatment. At the time of the accident, Dennis Scharich was potentially covered under three separate insurance policies. Dennis' father, Thomas Scharich, had no-fault coverage through Titan. Cathy and Michael Schenk had no-fault car insurance with Amerisure. Michael Schenk, an employee of Walbro, also was a participant in the Walbro Corporation Employee Benefit Trust (the "Plan"). This self-funded, employee benefits plan was administered by the Provident Life and Accident Insurance Company, provided health and medical insurance coverage, and was qualified under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. After the accident, Cathy and Michael Schenk submitted claims for Dennis' medical bills to Amerisure and Walbro's Plan. Amerisure refused coverage, instruct-

---

1. The court had established a physical custody schedule that would bind the parties in the event that they could not agree on a plan that provided "reasonable rights of joint physical custody." That plan provided that, during the school year, Cathy would have custody from 7:00 p.m. on every Monday until 9:00 a.m. every Friday morning. Thomas would have custody of his son on the weekends while school was in session. During the summer break from school, the custody arrangement was essentially the same, except each parent was granted two uninterrupted weeks of custody. This plan, however, never took effect because Thomas and Cathy were able to develop their own arrangement to ensure reasonable rights of physical custody.

ing Cathy Schenk in a letter dated July 26, 1993, that "bills for all medical expenses must first be submitted to your health insurance carrier for payment. We are only responsible for the portion of those reasonable and necessary expenses denied or partially paid by your health insurer." Cathy and Michael Schenk then submitted a claim for benefits to Walbro's Plan.

The Plan included the following coverage provision relating to injuries and illnesses caused by the acts of third parties:

Medical care benefits are not payable to or for a person covered under this Plan when the injury or illness to the covered person occurs through the act or omission of another person. However, the Company, may elect to advance payment for medical care expenses incurred for an injury or illness in which a third party may be liable. For this to happen, the covered person must sign an agreement with the Company to pay the Company in full any sums advanced to cover such medical expenses from the judgment or settlement he or she receives.

Before Walbro would advance funds to cover Dennis Scharich's medical bills, Provident Life and Accident Insurance Company, the Administrator of the Plan, required Michael and Cathy Schenk to sign the following agreement:

I agree, for myself and on behalf of my dependents, that if Provident advances benefits to or on behalf of me or my dependents, that I will repay Provident or the Plan in full any sums advanced to cover such expenses from any judgment or settlement I or my dependents receive. I further agree that Provident or the Plan may file this instrument as a lien with the person whose act caused the injuries, his agent, the court, or my attorney.

After Michael and Cathy Schenk signed this agreement, Walbro paid medical bills totaling $72,401.26 on behalf of Dennis Scharich.

In June of 1994, Dennis Scharich, a minor, by Thomas Scharich, next friend, and Thomas Scharich and Cathy Schenk, individually, sued Linda Mae Scharich in Bay County Circuit Court, setting forth a claim under Michigan's No-Fault Automobile Insurance Act ("No-Fault Act"), M.C.L. §§ 500.3101—500.3177, for the recovery of non-economic damages resulting from the July 1993 accident. The plaintiffs and Linda Mae Scharich's insurer, the Indiana Insurance Company, settled these claims on August 22, 1994. Walbro, seeking reimbursement for its payment of Dennis Scharich's medical bills, then filed a lien on the settlement with the Indiana Insurance Company.

At this point, litigation concerning the liability for the medical bills was actually proceeding in both state and federal courts. On July 18, 1994, Walbro filed its first complaint in the District Court against Amerisure and Linda Mae Scharich seeking repayment for its advance of the medical expenses. In its first amended complaint, filed on September 6, 1994, Walbro added the following defendants: Michael Schenk, Cathy Schenk, and Dennis Scharich, individually and through Next Friend, Thomas Scharich. Meanwhile, the plaintiffs in the state court litigation filed a motion to quash Walbro's lien, and, on November 1, 1994, the state court entered an order setting aside the lien. Michael and Cathy Schenk never responded to the claims made against them in the district court, and on December 21, 1994 the Clerk of Court entered their default. A default judgment subsequently was entered against Michael and Cathy Schenk.

In August, 1995, Linda Mae Scharich was granted summary judgment against Walbro. Walbro has not appealed that decision and Linda Mae Scharich is no longer a party to this case. On August 31, 1995, Walbro filed a third amended complaint, which forms the basis of the instant litigation. In this, the latest complaint, Walbro sued individually and as subrogee of Dennis Allen Scharich as well as Cathy and Michael Schenk. It named the following defendants: Amerisure, Michael Schenk, Cathy A. Schenk, individually and as co-conservator of the Estate of Dennis Allen Scharich, a minor, Thomas D. Scharich, as co-conservator of the Estate of Dennis Allen Scharich, a minor, and Titan Insurance Company. This final complaint alleged four counts. In the first two counts, Walbro sought reimbursement from Titan and Amerisure under Michigan's No-Fault

Act and under a theory of unjust enrichment. In the third count, Walbro alleged that it had a contractual right to reimbursement from Michael Schenk or Dennis Allen Scharich, by and through Cathy Schenk and Thomas Scharich, because these parties had recovered money relating to Dennis' injuries from Linda Mae Scharich. In the fourth and final count, Walbro alleged a state law right of recovery from Thomas Scharich and Cathy Schenk.

Defendant Thomas Scharich moved for summary judgment arguing, under Michigan's No–Fault Act, that Walbro had no right to recover from money paid in settlement of a state law claim for non-economic damages. The District Court granted summary judgment upon the recommendation of a magistrate judge. The District Court reasoned that under M.C.L. § 500.3116(4),[2] a plaintiff can only seek reimbursement from the settlement or judgment of a tort claim for medical expenses. It then noted that this would be impossible in this case because M.C.L. § 500.3135 precluded the Estate of Dennis Scharich from suing in tort to recover medical and economic expenses that arise from an automobile accident.[3] The District Court rejected Walbro's claims that ERISA had preempted Michigan's No–Fault Act and that it was entitled to recover under a theory of unjust enrichment. On January 3, 1996, the District Court entered an order granting summary judgment in favor of defendant Thomas Scharich.

On December 13, 1995, defendant Amerisure moved for summary judgment, arguing that Titan, not Amerisure, was the priority insurer under Michigan's No–Fault Act because on the day of the accident, Dennis Scharich was domiciled with his father, who was Titan's insured. Titan responded that Amerisure was the higher priority insurer, and that genuine issues of material fact surrounding the domicile of Dennis Scharich

precluded summary judgment. Walbro filed a response and cross-motion for summary judgment, arguing that the District Court should deny Amerisure's motion for summary judgment because Amerisure and Titan were at the same priority level and shared the obligation to provide medical insurance coverage on a pro rata basis.

On February 1, 1996, the magistrate judge issued a written report that recommended, among other things, granting Amerisure's motion for summary judgment, denying Walbro's cross-motion against Amerisure, and granting Walbro's cross-motion for summary against Titan. Walbro and Titan filed objections in the District Court to the magistrate judge's report and recommendations. The District Court adopted the magistrate judge's recommendation that Dennis Scharich was domiciled with his father, and, therefore, that Titan was solely responsible for reimbursing Walbro for its payment of Dennis Scharich's medical expenses. The District Court then granted summary judgment in favor of Walbro against Titan, and in favor of Amerisure against Walbro.

Titan appeals the District Court's order granting summary judgment in favor of Walbro. Walbro cross-appeals the District Court's orders granting summary judgment in favor of defendants Amerisure and Thomas Scharich, as co-conservator of the estate of Dennis Allen Scharich.

## II. Jurisdiction

■ Plaintiff sought recovery of funds that its self-funded, ERISA-qualified benefits plan advanced to cover Dennis Scharich's medical expenses, alleging that defendants either owed a contractual obligation to reimburse Walbro, or were unjustly enriched by their failure to reimburse Walbro. These claims arise under a body of federal common law governing ERISA-qualified plans, thereby providing the District Court with federal

---

**2.** M.C.L. § 500.3116(4) provides, in pertinent part, that "[a] subtraction or reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss as provided in section 3135(1) and (2)(b)."

**3.** Section 500.3135 abolishes "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle ... except as to" claims for such things as intentionally caused harm to persons or property, and noneconomic losses in cases where the injured person suffered death, serious impairment of a body function, or permanent serious disfigurement.

question jurisdiction under 28 U.S.C. § 1331. *See, e.g., Bollman Hat Co. v. Root,* 112 F.3d 113, 115 (3d Cir.), *cert. denied* —— U.S. ——, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997) (finding federal question jurisdiction in suit by plan sponsor to recover funds advanced by ERISA plan to cover medical expense of plan participant); *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371 (6th Cir.1994) (deciding that federal common law controlled outcome of no-fault insurance carrier's claim seeking reimbursement for medical expenses from employee benefit plan qualified under ERISA); *Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d 985, 989 (4th Cir.1990) (holding that plan administrator's "claim of unjust enrichment may not be predicated on state law given ERISA's broad preemption provision"); *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221, 235 (6th Cir. 1986) ("[T]he preemption of state law by ERISA and the congressional directive to develop a federal common law of employee benefit plans require application of federal law to actions premised on the contractual obligations created by ERISA plans."). The District Court had jurisdiction over plaintiff's claims for reimbursement under Michigan's No–Fault Act pursuant to 28 U.S.C. § 1367(a), which provides federal district courts with supplemental jurisdiction over claims that arise out of the same occurrence. *See Green v. Nevers,* 111 F.3d 1295, 1299 (6th Cir.1997). We have jurisdiction under 28 U.S.C. § 1291.

### III. Discussion

#### A. Standard of Review

We review the District Court's grant of summary judgment de novo. *See, e.g., Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED.R.CIV.P. 56(c).

#### B. Walbro's State Law Claims

■ We first consider Walbro's and Titan's arguments that the District Court erred in determining, under Michigan's No–Fault Act, that Dennis Allen Scharich was covered only under his biological father's no-fault insurance policy with Titan. Neither Titan nor Walbro contests the District Court's decision that Dennis Scharich was domiciled in the household of Thomas Scharich and was covered under his policy with Titan. Instead, they assert that Dennis was domiciled with both his father and his mother and was also covered under Michael Schenk's no-fault automobile insurance policy with Amerisure. In response, Amerisure contends that a person can have only one domicile under Michigan law, and that the facts of this case support the District Court's conclusion that Dennis was domiciled with his father, thereby making Titan solely responsible for insurance coverage.

We turn first to Michigan's No–Fault Act, which establishes who is entitled to coverage under no-fault insurance policies. In § 3114(1), the Act provides, in pertinent part, that "a personal insurance protection policy described in section 3103(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle statute." M.C.L. § 500.3114(1).[4] Thus, our resolution of whether Dennis Scharich was covered under the insurance policy of his father, the policy of his stepfather, Michael Schenk, or both of these policies, hinges upon our determination of where Dennis was domiciled at the time of the accident.

This case presents a novel question under Michigan's No–Fault Act: whether a child of divorced parents may be domiciled in both of his or her parents' households, for insurance purposes, if the evidence shows that the child actually resided in both of their separate

---

4. In practice, this Section "requires an injured person to first seek benefits from the insurer of a relative domiciled in the same household before seeking benefits from the insurer of the owner of the vehicle occupied at the time of the injury." *Hicks v. Automobile Club Ins. Ass'n,* 189 Mich. App. 420, 421, 473 N.W.2d 704 (Mich.Ct.App. 1991).

households. Although the No–Fault Act does not define the term "domicile," the Michigan Supreme Court considered the meaning of the phrase "domiciled in the same household" in *Workman v. Detroit Automobile Inter–Insurance Exchange,* 404 Mich. 477, 274 N.W.2d 373 (1979). The court first concluded that "in this State, the terms 'domicile' and 'residence' are legally synonymous (except in special circumstances)." 274 N.W.2d at 379. After reviewing the opinions of Michigan courts as well as those of other state courts, the court explained "that the terms 'resident' of an insured's 'household' or, to the same effect, 'domiciled in the same household' as an insured have 'no absolute meaning', and that their meaning 'may vary according to the circumstances.'" *Id.* (quoting *Cal–Farm Insurance Co. v. Boisseranc,* 151 Cal.App.2d 775, 312 P.2d 401, 404 (1957)). It then distilled the following list of four relevant factors for courts to use to determine where a person is domiciled for insurance coverage purposes:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his 'domicile' or 'household'; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging 'residence' or 'domicile' in the household.

274 N.W.2d at 379–80 (citations omitted). The court emphasized that "no one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Id.* 274 N.W.2d at 379.

The court applied these factors and concluded that the plaintiff, who was living with her husband in a trailer on the property of her father-in-law, was domiciled in her father-in-law's household. The court noted that although plaintiff was staying temporarily with her younger sister in her mother's house at the time of the accident, she planned on returning to the trailer and remaining there indefinitely. The court also emphasized that the trailer was near her father-in-law's house, that she used her father-in-law's address as her mailing address, and that the relationship between the plaintiff, her husband, her child, and her father-in-law's family was informal and friendly. These and other factors made it "overwhelmingly clear ... that plaintiff was 'domiciled in the same household' as her father-in-law." *Id.* 274 N.W.2d at 380.

In a later insurance coverage case, the Michigan Court of Appeals considered whether a twenty-year-old son remained domiciled with his mother even though he had moved in with his grandfather in another town. *Dairyland Ins. Co. v. Auto–Owners Ins. Co.,* 123 Mich.App. 675, 333 N.W.2d 322 (1983). The court held that *Workman*'s list of factors was non-exhaustive and identified additional variables that should guide courts faced with the task of determining domicile under Michigan's No–Fault Act. As the *Dairyland* court explained,

[o]ther relevant indicia of domicile include such factors as whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support.

333 N.W.2d at 325; *see also Goldstein v. Progressive Cas. Ins. Co.,* 218 Mich.App. 105, 553 N.W.2d 353, 356 (Mich.Ct.App.1996) (compiling factors listed in *Workman* and *Dairyland*); *Williams v. State Farm Mut. Auto. Ins. Co.,* 202 Mich.App. 491, 509 N.W.2d 821, 823 (1994) (same). The court concluded that the son was no longer domiciled with his mother because he had not lived with her for six months, was not dependent upon her for support, and had no plans to move out of his grandfather's trailer.

Although these opinions provide us with some guidance on the meaning of the term domicile under Michigan's No–Fault Act, these courts construed that term in cases involving children who had attained the age of majority. Thus, they do not shed much

light on the question of whether a minor child may be domiciled simultaneously in both of his divorced parents' households. In another set of cases, the Michigan Court of Appeals has considered the effects of impending divorces on insurance coverage. In *Bierbusse v. Farmers Ins. Group*, 84 Mich. App. 34, 269 N.W.2d 297, 299 (Mich.Ct.App. 1978), it held that "[w]hen a couple is separated pending divorce and one spouse is named on a no-fault policy, the other spouse and the children of the named insured are covered by the no-fault policy, even though they are domiciled in separate households, until the divorce is finalized." *See also Smith v. Auto Owners Ins. Co.*, 123 Mich. App. 585, 332 N.W.2d 620 (Mich.Ct.App.1983) (extending *Bierbusse* rule to step-children of named insured). *But see Auto Club Ins. Ass'n v. State Farm Ins. Cos.*, 221 Mich.App. 154, 561 N.W.2d 445 (Mich.Ct.App.1997) (holding, in case with estranged spouses, that relative or child of insured or insured spouse must be domiciled in household of named insured to trigger coverage under M.C.L. § 500.3114(1)). The *Bierbusse* court based its analysis, in large part, on its conclusion that "[t]he no-fault automobile statute is remedial in nature, attempting to correct the deficiencies found in the old tort system." 269 N.W.2d at 298. It then explained that "[r]emedial statutes are to be construed liberally in favor of the persons intended to be benefitted by the statute." *Id.* 269 N.W.2d at 298–99. Beyond this rule of statutory construction, these cases do not provide us with much additional guidance; in the instant case, Dennis Scharich's parents were already divorced but shared legal and physical custody.

When it considered this issue of Dennis Scharich's domicile, the District Court relied on the four factors listed in *Workman*. The court wrote as follows:

The court concludes that, assuming Dennis Scharich also maintained a domicile with his mother, the fact that his father had physical custody of his son at the time of the accident—that Dennis was living with his father—to be the most significant factor here. Therefore, in balancing the *Workman* factors, the court finds that they tilt in favor of finding that Dennis Scharich

was domiciled with his father for no-fault insurance purpose. Thus, the father's insurer, Titan, is responsible for paying benefits.

This analysis reveals that the District Court considered itself compelled to determine that Dennis Scharich was domiciled either with his mother or with his father. The court concluded that Dennis was domiciled with his father because Dennis happened to have been staying with the father when he was injured. At an earlier point in its opinion the court even stated, "[t]he court will assume, for the purpose of the fourth *Workman* factor, that Dennis Scharich was domiciled in two places—at his mother's home and at his fathers." Although it was willing to assume that Dennis was domiciled in two places, the District Court never considered whether this entitled Dennis to insurance coverage under two policies.

We find nothing in Michigan's No–Fault Act that requires us to determine that a child who appears to reside equally with both of his or her divorced parents is domiciled only with the parent who has physical custody at the time of the accident. Although we acknowledge the existence of a historical rule that "[a]n individual ... may have several residences, but only one domicile," *Eastman v. University of Michigan*, 30 F.3d 670, 673 (6th Cir.1994), we find that this rule does not apply in this case. The Michigan Supreme Court concluded in *Workman* that, under the No–Fault Act, residence and domicile "are legally synonymous." 274 N.W.2d at 379. By equating domicile and residence, the No–Fault Act breaks with the traditional legal distinction that courts have drawn between "domicile" and "residence." *See Eastman*, 30 F.3d at 673 ("[D]omicile is an individual's permanent place of abode where he need not be physically present, and residence is where the individual is physically present much of the time."). Because the *Workman* court relied on other state courts' constructions of the term residence when it attempted to define the term domicile under Michigan's No–Fault Act, we find that the term domicile, in this context, takes on the less restrictive meaning more commonly associated with the term residence. The court, in fact, stat-

ed that its general review of state court opinions "reveal[ed] the general principle that the terms 'resident' of an insured's 'household' or, to the same effect, 'domiciled in the same household' as an insured, have 'no absolute meaning', and that their meaning 'may vary according to the circumstances.'" 274 N.W.2d at 379 (quoting *Cal–Farm Ins. Co. v. Boisseranc*, 151 Cal.App.2d 775, 312 P.2d 401, 404 (1957)). Thus, the No–Fault Act's use of the word domicile does not in itself indicate that the child of divorced parents may be domiciled in only one of his parents' households.

As the *Workman* court did when it construed the term "domicile," we turn to opinions of courts of other states for guidance. We find that an abundant number of courts have held that a child of divorced parents "could be a resident of two separate households for purposes of insurance coverage." *Miller v. United States Fidelity and Guar. Co.*, 127 N.J.Super. 37, 316 A.2d 51, 55 (N.J.Super.Ct.App.Div.1974); *see also Tokley v. State Farm Ins. Cos.*, 782 F.Supp. 1375, 1381 (D.S.D.1992) ("Where the extent of the relationship and the contacts between the child and non-custodial parent are of the duration and regularity presented by this case, [this District Court] believes the Supreme Court of South Dakota would adopt the generally accepted view that the child in fact lives with both parents."); *Aetna Cas. & Sur. Co., v. Shambaugh*, 747 F.Supp. 1203, 1205 (N.D.W.Va.1990) (finding that child of divorced parents had "dual residency under the plain meaning of the phrase 'resident of the household'"); *Alava v. Allstate Ins. Co.*, 497 So.2d 1286, 1288 ( Fla.Dist.Ct.App.1986) ("[T]he facts here reveal that [the child] is, indeed, a resident of two households."); *Coriasco v. Hutchcraft*, 245 Ill.App.3d 969, 185 Ill.Dec. 769, 771, 615 N.E.2d 64, 66 (1993) (holding that "minor child of divorced parents ... who has regular visitation with a noncustodial parent is a resident of both households for purposes of the underinsured motorist provision"); *American Family Mut. Ins. Co. v. Thiem*, 503 N.W.2d 789, 790 (Minn.1993) ("Although it is possible to have only one domicile, it is possible for insurance purposes to be a resident of more than one household."); *Farmers Ins. of Columbus,*

*Inc. v. Taylor*, 39 Ohio App.3d 68, 528 N.E.2d 968, 970 (1987) ("We find no reason to preclude dual residency by judicial fiat with respect to insurance coverage."); *Hartford Cas. Ins. Co. v. Phillips*, 575 S.W.2d 62, 64 (Tex.Civ.App.1978) ("It is quite evident that a finding by the court or jury that [the child] was a 'resident' of his father's household would be adequately supported by the evidence. However, such a finding would not necessarily foreclose and prevent a finding that he was also a 'resident' of his mother's household."). Moreover, the courts that have denied coverage of a child under the policy of a divorced parent, generally do so "in situations where the facts were insufficient to support a finding that the child was a member of the household of a named insured-parent." *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655, 657 (Mo.Ct.App.1987) (collecting cases); *see also* David B. Harrison, Annotation, *Who is a "Member" or "Resident" of same "Family" or "Household," within No–Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy*, 96 A.L.R.3d 804 (1980) (collecting cases).

In *Aetna Casualty and Surety Co. v. Williams*, 623 So.2d 1005 (Miss.1993), the Supreme Court of Mississippi adopted a blanket rule that "a minor child qualifies as a 'resident' in both households of divorced parents." *Id.* 623 So.2d at 1009. This rule applies even if named insured has no custody over the child. The court reasoned that this rule protects a non-custodial parent's ability to provide insurance for his or her child. It wrote as follows:

> [I]t is often the non-custodial parent who is in a better financial position to maintain insurance policies on the minor children. Thus, to thwart the non-custodial parent's ability to provide uninsured motorist coverage for his children and recover under any policies he holds could serve not only to limit the protection available to the child, but also adversely impact the custodial parent.

*Id.* 623 So.2d at 1011. In *Tokley*, the District Court for the District of South Dakota supported its conclusion that South Dakota's insurance laws permit dual residency with a

similar analysis. It recognized "the contemporary reality that families often separate and the children of such dissociated families must necessarily split their time between households if they are to receive the companionship, communication, and guidance of both parents." 782 F.Supp. at 1381. The court then concluded that without dual residency for insurance purposes, children in these circumstances would go uninsured whenever the custodial parent was uninsured. *See id.*

We find the analyses of these other courts and their constructions of the term resident to be persuasive. We conclude that the synonymous term "domicile" in Michigan's No–Fault Act permits a minor child of divorced parents to be "domiciled" in both of his or her parents' households if the evidence shows that the child actually resided with both parents. This rule allows a divorced parent to provide insurance coverage for his or her child, without fear that the coverage could disappear whenever his or her child visits the other divorced parent. The District Court's conclusion that a child who resides with both of his divorced parents is legally domiciled only with the parent that has physical custody at the time of the accident could cause grave consequences in cases where one of the divorced parents was uninsured. Under this approach, a child would have no insurance coverage at all whenever he or she stayed with an uninsured parent who shared custody. There would also be the problem of the point at which domicile changes when the child is traveling between the parents' residences or is visiting third persons. Our conclusion that the No–Fault Act allows children of divorced parents to be domiciled in the separate households of both parents who share custody finds additional support in the policy that Michigan's No–Fault Insurance

Act is a remedial statute that is "to be construed liberally in favor of the persons intended to be benefitted by the statute." *Bierbusse,* 269 N.W.2d at 298–99; *accord Dudewicz v. Norris–Schmid, Inc.,* 443 Mich. 68, 77, 503 N.W.2d 645, 649 (1993) (quoting *Bierbusse,* 269 N.W.2d at 298–99). We need not consider whether a child may be domiciled in the household of a divorced parent in those cases where the parents do not share custody of the child.

■ The facts of this case clearly establish that Dennis Scharich was domiciled in both his mother's and father's homes. His parents had joint legal and physical custody. Dennis would spend alternating weeks with his parents, but the schedule was flexible enough to accommodate his school, sports, and other activities. He had his own room and personal belongings in both his mother's and father's homes. He attended church wherever he stayed that weekend. There is no evidence that his parents intended to change this arrangement of equally-shared custody. Applying the factors listed in *Workman* and *Dairyland,* the evidence clearly establishes that Dennis was domiciled with both his parents. Therefore, we conclude that Dennis Scharich was covered under both his father's policy with Titan and his stepfather's policy with Amerisure.

■ We also find that Titan and Amerisure are insurers of equal priority as determined by M.C.L. § 500.3114. Therefore, under M.C.L. § 500.3115(2),[5] Amerisure and Titan share equally the responsibility for the medical expenses that the Walbro Plan advanced on behalf of Dennis Scharich.[6]

For these reasons we reverse the District Court's order granting summary judgment in

---

**5.** M.C.L. § 500.3115(2) provides as follows:

When two or more insurers are in the same order of priority to provide personal protection benefits, an insurer paying benefits due is entitle to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among insurers.

*Id.*

**6.** Amerisure's argument that Michael Schenk's no-fault policy has a coordinated benefits clause

that subordinated its coverage for medical expenses to the coverage for medical expenses provided by the Walbro Plan is without merit. The Walbro Plan explicitly excluded from coverage any medical expenses for illnesses and injuries caused by third parties. Dennis Scharich received an advancement of funds from the Plan to cover expenses that had been specifically excluded from coverage. Thus, the Plan provided no benefits with which Amerisure could coordinate its coverage.

favor of Amerisure and hold that Amerisure and Titan are equally responsible for Dennis Scharich's medical expenses resulting from the motor vehicle accident on July 18, 1993.

## C. Federal Common Law Claims

Walbro also appeals the District Court's order granting summary judgment in favor of Thomas Scharich, in his capacity as co-conservator of the Estate of Dennis Scharich. Walbro asserts that Cathy and Michael Schenk agreed, on behalf of Dennis, to reimburse the Walbro Plan for the payments advanced to cover Dennis Scharich's Medical expenses, from the proceeds of any judgment or settlement against a third party arising out of the accident. It argues that the Estate of Dennis Scharich has been unjustly enriched by its failure to repay Walbro from the settlement of the lawsuit against Linda Mae Scharich.

We find it unnecessary to consider Walbro's argument that the District Court erred in granting summary judgment against it and in favor of Thomas Scharich, as co-conservator of the Estate of Dennis Scharich. After Walbro has recovered from Titan and Amerisure, it will no longer be in need of reimbursement from the Estate of Dennis Allen Scharich. Thus, its claim for reimbursement from the Estate of Dennis Scharich has become moot.

## IV. Conclusion

For the foregoing reasons, we reverse the District Court's order granting summary judgment in favor of defendant Amerisure. We hold that Amerisure and Titan, as insurers of equal priority, are responsible pro rata for the reimbursement of Dennis Scharich's medical expenses. The case is remanded to the District Court to enter judgments in accordance with this opinion and to dismiss the moot claim.