752 A.2d 793

SOMERVILLE BOARD OF EDUCATION, PLAINTIFF/APPELLANT, v. MANVILLE BOARD OF EDUCATION, DEFENDANT/RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 27, 1999—Reargued April 5, 2000—Decided June 13, 2000.

8

---

Before Judges BAIME, EICHEN and WECKER.

*Allan P. Dzwilewski* argued the cause for Plaintiff/Appellant Somerville Board of Education, *Schwartz Simon Edelstein Celso & Kessler,* attorneys (*Nathanya G. Simon,* of counsel; *Mr. Dzwilewski* on the brief).

*David W. Trombadore* argued the cause for Defendant/Respondent Manville Board of Education, *Raymond R. & David W. Trombadore,* attorneys; *Mr. Trombadore* on the brief.

*Michael C. Walters* argued the cause for Amicus Curiae, New Jersey Department of Education. *John J. Farmer Jr.* Attorney General of New Jersey, Attorney for Amicus (*Nancy Kaplen,* Assistant Attorney General of counsel, *Mr. Walters* on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

■ This appeal raises an issue of first impression respecting financial responsibility among school districts.[1] Specifically, when the parents of a minor child live in different school districts and the child lives with each parent in alternate weeks under a joint custody arrangement; and the child requires out-of-district special education; should one district or both be responsible for the expense of the child's special education? We hold that on the

---

[1] After the argument of this appeal on October 27, 1999, we invited the participation of the New Jersey Department of Education. The Department submitted a brief as amicus curiae, and both parties thereafter submitted supplementary briefs. The appeal was reargued on April 5.

facts presented, both districts must share the child's education costs.

## I.

The child in this case was born on May 12, 1984. The family lived in Somerville and the child was enrolled in Somerville's public school system. In 1989, the child was classified as neurologically impaired. There is no dispute that federal and state law entitle this child to a free special education. *See Individuals With Disabilities Education Act,* 20 *U.S.C.A.* §§ 1400 to –1490 (IDEA); *N.J.S.A.* 18A:46–1 to –46.

The child's parents were divorced in 1990, and we are informed that the divorce judgment provides that the parents have "joint legal custody" of the child and also share joint physical custody. Since the divorce, the child has lived with each parent in alternate weeks. The child's mother has lived in Manville since the divorce, while her father continues to live in Somerville. Until 1993, the child attended the Somerville public schools.

The IDEA requires each child who has been identified as having a disability, as defined by 20 *U.S.C.* § 1401(3), to have an Individualized Education Program ("IEP") developed for him or her by an Individualized Education Program Team ("IEP Team"). 20 *U.S.C.* § 1414(a) and (d)(1)(A) and (B). This child's IEP was originally developed by Somerville pursuant to *N.J.A.C.* 6A:14–3.7, and the child was placed in the Midland School in North Branch, New Jersey in 1993 pursuant to that plan. The child has attended the Midland school since. Prior to the child's enrollment at Midland, the Directors of Special Services for the Manville and Somerville school districts entered into an oral agreement to share the costs of the child's special education on an alternating year basis. The respective boards of education never formally adopted or reduced this agreement to writing; however, Somerville paid the child's tuition at Midland for the 1993–94, 1995–96, and 1997–98 school years, while Manville paid the child's tuition for 1994–95, and part of the 1996–97 school years. In November 1996, a new

Director of Special Services in Manville determined that Manville would no longer pay the child's tuition, on the ground that the child was not a Manville domiciliary.

Somerville then instituted this action, seeking an order declaring that the child has a dual domicile in Somerville and Manville; that the 1996–97 oral agreement to pay the child's tuition is valid and enforceable; that Somerville and Manville must continue to provide the child with an appropriate education on an alternating year basis; and that Manville is estopped from disavowing its agreement to provide educational services to the child. Manville denied any liability for the child's educational expenses and counterclaimed for reimbursement of sums previously paid for the child's tuition at Midland.

On the districts' cross-motions for summary judgment, the Law Division determined that the child is a Somerville domiciliary for purposes of obtaining a free public education and that Somerville would be solely responsible in the future for providing the child with an appropriate special education. The motion court did, however, hold Manville responsible for the balance of the child's 1996–97 tuition under the districts' oral agreement. Somerville appeals that portion of the order finding the child "to be a Somerville domiciliary for purposes of obtaining a free public education" and finding Somerville solely responsible for the child's future educational expenses.[2]

On appeal, Somerville argues that the child has an alternating domicile which entitles her to a free and appropriate education from both Manville and Somerville. Manville contends that the child cannot have two domiciles and that her current domicile is Somerville, where her parents maintained the marital home prior to the divorce. Amicus, the New Jersey Department of Education, contends that the principle of "educational continuity" should control, and that because the child was originally enrolled

---

[2] Manville does not cross-appeal the order requiring it to pay the balance of the child's 1995–96 tuition and denying reimbursement.

in the Somerville schools, Somerville should remain responsible for her future educational expenses.

## II.

Whether a minor child who is subject to the joint custody arrangement presented by this case can be said to have two domiciles, for purposes of apportioning financial responsibility for that child's special education, is a novel question. To resolve that question, we begin by considering the relevant statutes.

Public education, including education for children with a disability, must be provided free of charge to persons over five and under twenty years of age who are "domiciled within the district." *N.J.S.A.* 18A:38-1(a). *N.J.S.A.* 18A:1-1 defines the term "residence" as "domicile, unless a temporary residence is indicated." Cases addressing disputed domicile most frequently involve different states and frequently arise in the context of taxation. *E.g., Lyon v. Glaser,* 60 *N.J.* 259, 288 *A.*2d 12 (1972) (New Jersey inheritance tax inapplicable because decedent was no longer a New Jersey resident during the relevant period). In that case, the Supreme Court defined domicile as:

> very much a matter of the mind—of intention. One may be acquired, or changed to a new one, when there is a concurrence of certain elements; i.e., an actual and physical taking up of an abode in a particular State, accompanied by an intention to make his home there permanently or at least indefinitely, and to abandon his old domicil.[3] A person has the right to choose his own domicil, and his motive in doing so is immaterial. The change may be made to avoid taxation, so long as the necessary ingredients for establishment of the new domicil are present. A very short period of residence in a given place may be sufficient to show domicil, but mere residence, regardless of its length, is not sufficient. It has been said that concurrence, even for a moment, of physical presence at a dwelling place with the intention of making it a permanent abode, effects a change of domicil. And once established, the domicil continues until a new one is found to have been acquired through an application of the same tests.
>
> [*Lyon,* 60 *N.J.* at 264, 288 *A.*2d 12 (footnote omitted) ].

---

[3] The spellings "domicil" and "domicile" are both used in the literature. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 291 (2d ed. 1995) ("Domicile is spelled both with and without the final -e, but the better and more common spelling is with it.")

■ It has long been held that a person may have only one domicile, although he may have many residences, and that domicile is determined by permanent intention, while residence can be more transitory. *E.g., In re Estate of Gillmore,* 101 *N.J.Super.* 77, 86–87, 243 *A.*2d 263 (App.Div.), *certif. denied,* 52 *N.J.* 175, 244 *A.*2d 304 (1968)(testatrix acquired New Jersey domicile for purposes of inheritance tax). The overall concept of domicile may, however, "have different content and shades of meaning depending upon the context in which it is used. . . ." *Id.*

■ A child's domicile is normally that of his or her parents. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 *U.S.* 30, 48, 109 *S.Ct.* 1597, 1608, 104 *L.Ed.*2d 29, 46 (1989); *Roxbury Twp. Bd. of Educ. v. West Milford Bd. of Educ.,* 283 *N.J.Super.* 505, 521–22, 662 *A.*2d 976 (App.Div.1995), *certif. denied,* 143 *N.J.* 325, 670 *A.*2d 1066 (1996); 25 *Am.Jur.2d Domicil* § 42 (1996); *Restatement (Second) Conflict of Laws* § 22 (1971). After a divorce or judicial separation, the domicile of the child is that of the parent with whom the child lives. *Roxbury,* 283 *N.J.Super.* at 521–23, 662 *A.*2d 976; 25 *Am.Jur.2d Domicil* § 42.

In *Roxbury,* the dispute over the child's domicile did not involve the kind of joint physical custody arrangement we face in this case,[4] but rather arose out of one parent's move to a different municipality, along with a change of physical custody from one parent to the other. We upheld the Law Division holding "that the parents were perfectly capable of coming to an agreement as to J.K.'s physical custody without court approval," 283 *N.J.Super.* at 521, 662 *A.*2d 976, where the parents' decision as to the child's residence was "reasonable and based on good faith considerations." *Id.* at 522, 662 *A.*2d 976. The Law Division Judge found

---

[4] In *Roxbury,* we did not have occasion to pass upon the Administrative Law Judge's determination that for the balance of one school year, the districts where each parent then lived were to share the educational costs, or the Law Division Judge's disagreement "with the Administrative Law Judge's conclusion that a person can have more than one domicile." 283 *N.J.Super.* at 521, 662 *A.*2d 976.

that the child's single domicile was with his mother in West Milford and ordered West Milford to pay the child's education costs.

Where, as here, the divorced parents share equal parenting time under a joint custody arrangement, the traditional single-domicile rule requires reexamination. In these circumstances, the *Restatement (Second) Conflict of Laws* § 22 (1971) is pertinent:

> *Alternating domicil.* A court decree sometimes provides for the division of the child's custody between his parents so that he will live with one parent for a designated portion of each year and with the other parent during the remainder. When, in such a case, the parents live in different states, it has been held for purposes of jurisdiction in a custody action that the child's domicil alternates between these states so as to be the same as that of the parent with whom he is living at the time. *State ex. rel. Larson v. Larson*, 190 *Minn.* 489, 252 *N.W.* 329 (1934); *Mills v. Howard*, 228 *S.W.2d* 906 (Tex.Civ.App.1950); *Goldsmith v. Salkey*, 131 *Tex.* 139, 112 *S.W.2d* 165 (1938). This rule might not be applied in a case where one of the parents was entitled to the child's custody only for the period of a month during each year. *Cf. Allen v. Allen*, 200 *Or.* 678, 268 *P.2d* 358 (1954).
> [*Id.*, Reporter's Note comment d.]

The bright-line rule that "every person has at all times one domicil, and no person has more than one domicil at a time," was debated at the American Law Institute's 1925 meeting discussing the tentative draft of the first Restatement of Conflict of Laws. *See* Willis L.M. Reese, *Does Domicil Bear a Single Meaning?*, 55 *Colum. L.Rev.* 589, 590 (1955). Reese[5] rejects the "unitary concept" theory of the first Restatement and instead posits that "domicil is not a unitary concept. . . . [I]t is believed that the meaning of the term is not exactly the same for all purposes," *id.* at 592. Reese also notes that courts have "taken advantage of the flexibility in application of the rules of domicil" to achieve desired results and argues that "the meaning of domicil must of necessity vary somewhat from case to case." *Id.* at 596–97.

There is some support in other jurisdictions for a flexible approach to domicile when a child does not live in a traditional, two-parent household.

---

[5] Reese, a law professor at Columbia University, was the Reporter for the Restatement (Second) of Conflict of Laws.

The New Hampshire Supreme Court declined to apply a strict definition of "domicile" in a case dealing with the costs of special education. *In re Gary B.*, 124 *N.H.* 28, 466 *A.*2d 929 (1983). After his parents relinquished their parental rights, the child lived in a series of foster and group care homes until the State placed him in a special residential school in Massachusetts. In the ensuing dispute over liability for Gary's special education expenses under a statute assigning responsibility for all special education expenses to "the district in which the child last resided before placement," the New Hampshire Supreme Court noted that the relevant statute (much like New Jersey's) equated the terms "resident" and "residence" with "domicile." 466 *A.*2d at 931. Citing the "intent to remain in one place of abode" as an element of domicile, the court found the "intent" approach unworkable for applying [the special education statutes] to Gary's situation. *Id.* at 931–32. The court concluded that the statutes should be construed liberally to ensure that the education of handicapped children would not be interrupted by disputes between school districts over their financial responsibility and to provide all children in the state with a free education. Accordingly, the court held that "resided" in the statute meant the place where a child actually lived, rather than the child's legal residence or domicile. *Id.* at 932.

Recently, the Sixth Circuit applied the rules of domicile flexibly in an insurance coverage dispute involving the child of divorced parents. *Walbro Corp. v. Amerisure Companies*, 133 *F.*3d 961 (6th Cir.1998)(rejecting the single domicile rule). There the parents of a nine-year old boy shared custody of their son on an alternating week basis. When the child was injured in a car accident, a dispute arose over coverage under three separate insurance policies, issued respectively to his father, to his mother and stepfather jointly, and to his stepfather individually. In resolving the dispute, which turned on the child's domicile under the Michigan No–Fault Insurance statute, *Mich. Comp. Laws* § 500.3114(1), the Sixth Circuit noted that "the ... use of the word domicile does not in itself indicate that the child of divorced

parents may be domiciled in only one of his parent's households."
133 *F*.3d at 969. The court went on to find the term "domicile"
synonymous with "residence" and concluded that "a minor child of
divorced parents [can] be 'domiciled' in both of his or her parents'
households if the evidence shows that the child actually resided
with both parents." *Id.* at 970.

■ We are satisfied that in the circumstances before us, the
statute requiring a free public education to be provided by the
district where a child is "domiciled" does not require that only one
of the parents' homes, and therefore one district, be designated as
the child's domicile.

## III.

The Department of Education argues that "educational continui-
ty is the overriding principle" and that principle "indicates that
the Somerville School District is responsible for providing a free
public education to [the child]." [6] The Department contends that
because the child's IEP was developed by a Somerville child study
team, and because the IEP must be reviewed yearly (and by a
new study team in any district to which a handicapped student
moves), *N.J.A.C.* 6A:14–4.1(g), Somerville should continue to be
responsible because continuity provides consistency. Somerville
contends that this case is not about educational continuity, but
about who is responsible for paying the costs of the child's tuition
and related expenses.

We recognize the importance of educational continuity and
consistency, but disagree with the Department's contention that
these goals would be compromised in this case by requiring cost-
sharing between the districts. The Department argues that cost-
sharing poses a significant risk of future disagreements on the

---

[6] We were advised at oral argument that under provisions of both the IDEA
and the state administrative code, the child's current placement will not be
disturbed during the pendency of this case. *See* 20 *U.S.C.A.* § 1415(j); *N.J.A.C.*
6A:14–2.7(j).

child's placement and therefore on her educational continuity. That argument is not supported by the history of this case. Somerville and Manville apparently had no problem agreeing on the proper placement for the child when they first agreed to share the costs. While they may disagree about the child's IEP in the future, we assume that professionals in each district will continue to assess the child's needs in good faith and in the child's best interest.

That assumption is grounded in the controlling law. By definition the IDEA requires the team that develops and reviews the child's educational plan to be "individualized" and to include the child's parents, at least one of the child's teachers, a representative of the local school district, and at the discretion of a parent or school district, "other individuals who have knowledge or special expertise regarding the child...." 20 *U.S.C.* § 1414(d)(1)(B). Participation by representatives of both districts would not be inconsistent with the IDEA, or with the New Jersey Administrative Code provision for an IEP team to develop and periodically review each disabled child's IEP. *N.J.A.C.* 6A:14–3.7.[7] We see no impediment to cooperation between the districts in developing and/or reviewing this child's IEP, with appropriate concern for consistency and continuity in the education plan.

## IV.

At the re-argument of this appeal, we were informed for the first time that the Department of Education recently published a "Discussion Paper" that includes, among several topics, the ques-

---

[7] We note that both the Legislature and the Department have contemplated and provided for joint efforts among school districts in providing appropriate education to disabled students. *E.g., N.J.S.A.* 18A:46–5.1 permits a board of education "jointly with one or more boards of education or State agencies [to] provide for basic child study team services." *N.J.A.C.* 6A:14–5.1 permits "joint agreements" to "employ child study teams [and various specialists in order to] ensure provision of required programs and services...."

tion of "Domicile determinations in cases of joint custody." The discussion paper notes that:

> Increasingly, questions are arising with respect to determination of domicile in cases of children whose legal custody is shared by two parents living apart due to divorce or marital fissure. The variety of considerations underlying, and living arrangements resulting from, this type of circumstance make it difficult to codify uniformly applicable standards.
>
> [New Jersey Department of Education, *Proposed Code, School Attendance and Domicile/Residency Discussion Paper*, (April 6, 2000) <http://199.20.64.195/njded/proposed/dpres.htm >.]

We appreciate the difficulty faced by the Department in trying "to codify uniformly applicable standards." But that difficulty does not prevent us from correcting an unfair allocation of financial responsibility in this case. Presumably, the Department will provide regulatory guidance not only for the situation represented by this case, but also the various custody arrangements in which children of divorced or separated parents find themselves. Clearly these are appropriate subjects for administrative consideration in the first instance.

## V.

Under the particular circumstances of this case, fairness dictates that both school districts bear equally the costs of the child's special education.[8] The decision of the Law Division granting Manville's motion for summary judgment is reversed. The denial of Somerville's cross-motion for summary judgment is also reversed, and the matter is remanded to the Law Division for entry of judgment in favor of Somerville, and for determination of the amount due from Manville to equalize its cost-sharing contribution through the end of the 1999–2000 school year, and for such orders as may be appropriate to future cost-sharing by both districts.

---

[8] We find no reason to reach the estoppel argument raised by Somerville.