

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-29-2008

# Bd Ed Cumberland v. Bd Ed Freehold

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3110

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Bd Ed Cumberland v. Bd Ed Freehold" (2008). *2008 Decisions.* Paper 469.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/469

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3110

CUMBERLAND REGIONAL HIGH SCHOOL
DISTRICT BOARD OF EDUCATION,
Appellant

v.

FREEHOLD REGIONAL HIGH SCHOOL
DISTRICT BOARD OF EDUCATION

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 05-cv-05488)
District Judge: The Honorable Robert B. Kugler

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2008

Before: BARRY, AMBRO and GARTH, Circuit Judges

(Opinion Filed: September 29, 2008)

OPINION

BARRY, Circuit Judge

This appeal involves a dispute between two New Jersey school districts over

whether they must share the costs associated with providing a free public education to a disabled child whose divorced parents share joint legal and physical custody. An administrative law judge ("ALJ") determined that the districts must share the financial burden and the District Court affirmed. We, too, will affirm.

I.

L.G. is a now 25 year-old woman who suffers from multiple disabling conditions, including mental retardation, myasthenia gravis, impulse control disorder, an unspecified psychotic disorder, organic and mental disorder, oppositional defiant disorder, complex seizure disorder, mixed specific developmental disorder, and motor control disturbance. She lived with her parents in the Freehold Regional High School District ("Freehold") until June 1997, when, at the age of 14, she was placed in a residential program at the Bancroft School in Haddonfield, New Jersey. Because L.G. was domiciled in Freehold at that time, the educational component of her placement devolved to Freehold. Under the terms of a settlement reached in 1998, L.G.'s father contributed $14,500 annually to the cost of the placement and Freehold paid the remainder.

The Bancroft School discharged L.G. from its residential program in November 2001, and, after Freehold did not offer an alternative placement in a timely manner, L.G.'s father unilaterally placed her in a residential program at a children's hospital in New Kent, Virginia. The father's insurance company paid the hospital bills for a time, but after the payments ceased, the father filed a due process petition with the New Jersey

Department of Education requesting that Freehold assume financial responsibility for his daughter's new educational placement. During the course of the administrative proceedings, however, Freehold learned that L.G.'s parents had separated in 1999 and divorced in 2001, and that her mother had moved out of Freehold and into the Cumberland Regional High School District ("Cumberland"). Freehold also learned that the divorce decree provided the parents with joint legal and physical custody.

On October 22, 2002, Freehold served Cumberland with an amended third party due process petition in which it sought contribution for one-half of the educational costs associated with L.G.'s placement since August 24, 2000. Freehold and L.G.'s father reached an agreement regarding the amount each would contribute to the cost of L.G.'s placement at the Virginia hospital, as well as the costs for a subsequent placement at a facility in Florida, but Cumberland steadfastly maintained that it had no obligation to contribute to the cost of L.G.'s out-of-district placements because she had never been domiciled within its boundaries.

In an opinion and order issued on July 27, 2005, an ALJ, relying primarily on Somerville Board of Education v. Manville Board of Education, 752 A.2d 793 (N.J. Super. Ct. App. Div. 2000), aff'd, 768 A.2d. 779 (N.J. 2001) (per curiam), held that L.G. did not have a "clear domicile" and that equitable considerations required Freehold and Cumberland to share the cost of providing L.G. with a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.,

3

from the date Cumberland was given notice of the litigation, October 22, 2002, until

L.G's twenty-first birthday, when she would no longer be eligible for educational services

under the IDEA. Cumberland sought judicial review of the ALJ's decision in New Jersey

state court pursuant to 20 U.S.C. § 1415(i)(2)(A) and Freehold timely removed the case to

the United States District Court for the District of New Jersey. The District Court

concluded that the ALJ's decision was supported by the evidence and the applicable law

and granted summary judgment in favor of Freehold.

Cumberland raises three arguments on appeal. First, it argues that the decisions

below cannot be permitted to stand because they are contrary to the longstanding rule in

New Jersey that an individual can only have a single domicile. Next, it contends that both

the ALJ and the District Court erred by relying on Somerville because, it claims, that

decision was narrowly limited to the specific facts of the case. Finally, it asserts that we

must reverse because the ALJ's decision constituted impermissible, ad hoc rulemaking.[1]

II.

The District Court exercised jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and

28 U.S.C. § 1441. We have appellate jurisdiction under 28 U.S.C. § 1291.

The issue presented on appeal is a question of law. Our review is plenary. Polk v.

Susquehanna Intermediate Unit 16, 853 F.2d 171, 181 (3d Cir. 1988).

---

[1] The claim of "ad hoc rule making" is without merit.

In New Jersey, responsibility for the cost of educating children is apportioned between school districts on the basis of domicile. N.J. Stat. Ann. § 18A:38-1(a). Determining the district responsible for providing a disabled child a free appropriate public education under the IDEA is typically a straightforward task; "[a] child's domicile is normally that of his or her parents" and, in the case of divorce, "the domicile of the child is that of the parent with whom the child lives." Somerville, 752 A.2d at 796. A child's domicile is not as clear, however, in a case such as this where the child's parents are divorced and share legal and physical custody.

The Appellate Division's analysis of the issue in Somerville is helpful. There, a disabled child's divorced parents lived in different school districts and the child lived with each parent during alternate weeks. As is the case here, the parents' divorce judgment provided that they shared legal and physical custody of the child. The child attended a public school in Somerville, the town where the family lived together prior to the divorce and where the father continued to live following the divorce, until the 1993-1994 school year, when Somerville's child study team determined that the child should be placed at the Midland School in nearby North Branch, New Jersey. Prior to the child's placement at the new school, Somerville entered into an oral agreement with the Manville School District, the mother's new school district, under which each district agreed to pay the costs of the child's out-of-district placement on an every-other-year basis. This

5

arrangement continued for several years until Manville reneged on its commitment during the 1996-1997 school year on the ground that the child was not domiciled in Manville. Somerville then filed suit seeking, among other things, a declaration that the child had a dual domicile in Somerville and Manville.

In an opinion the Supreme Court of New Jersey later described as "thoughtful and comprehensive," Somerville, 768 A.2d at 780, a three-judge panel of the Appellate Division held that "a flexible approach to domicile [is appropriate] when a child does not live in a traditional, two-parent household." Somerville, 752 A.2d at 797. Writing for the unanimous panel, Judge Wecker stated:

> We are satisfied that in the circumstances before us, the statute requiring a free public education to be provided by the district where a child is "domiciled" does not require that only one of the parents' homes, and therefore one district, be designated as the child's domicile.
> . . . .
> We appreciate the difficulty faced by the [New Jersey] Department [of Education] in trying to codify uniformly applicable standards. But that difficulty does not prevent us from correcting an unfair allocation of financial responsibility in this case. . . .
> Under the particular circumstances of this case, fairness dictates that both school districts bear equally the costs of the child's special education.

Id. at 798-99 (internal quotations omitted). The Supreme Court of New Jersey granted certification and affirmed in a per curiam opinion for substantially the reasons set forth in Judge Wecker's opinion. Somerville, 768 A.2d at 780. Justice Coleman filed a concurring opinion, joined by Justice LaVecchia, in which he expressed his belief that the Appellate Division's opinion rested on the recognition that the child had "alternating

domiciles" and emphasized "that the Appellate Division's decision should not be viewed as overturning the unitary concept of domicile." Id. at 781 (Coleman, J., concurring). As he saw it, "[t]he polestar of the Court's opinion . . . [was] educational continuity for [the child]." Id.

We have little difficulty concluding that the ALJ and the District Court correctly relied on Somerville in holding that Cumberland must contribute to the cost of L.G.'s out-of-district placement. The rule announced therein, namely that the children of divorced parents who share legal and physical custody may have a dual domicile for purposes of allocating the cost of their education, is clearly applicable here. Although Cumberland, unlike Manville, never agreed to share the cost of L.G.'s education with Freehold, the absence of that fact in this case is not dispositive because the Somerville Court's decision rested on equitable, not contractual, grounds. If anything, we believe that a finding of dual domicile is more justified in a case such as this where the child has more or less lived full-time at an out-of-district school since before the parents were divorced. As the District Court noted, only two of the seven justices of the Supreme Court of New Jersey took issue with the portion of the Appellate Division's opinion in Somerville declaring that children of divorced parents may, under certain circumstances, have more than one "domicile," and we believe the silence of the other five justices is telling. The ALJ was confronted with a difficult question of law and faithfully applied the relevant precedent. We, like the District Court, can discern no legal basis to reverse the ALJ's well-reasoned

7

decision.

IV.

We will affirm the judgment of the District Court.