**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4113-19

BOARD OF EDUCATION
OF THE TOWNSHIP OF
PISCATAWAY,
MIDDLESEX COUNTY,

      Petitioner-Respondent,

v.

A.V. and S.V., on behalf of minor
children, N.V. and T.V.,

      Respondents-Appellants.

_____

Submitted September 20, 2021 – Decided September 27, 2021

Before Judges Vernoia and Firko.

On appeal from the New Jersey Commissioner of Education, Docket No. 232-8/16.

A.V., appellant pro se.

David B. Rubin, attorney for respondent Board of Education of the Township of Piscataway.

Andrew J. Bruck, Acting Attorney General, attorney for respondent Commissioner of Education (David L.

Kalisky, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

A.V., the father of two children, N.V. and T.V., appeals from a Commissioner of Education (Commissioner) final decision adopting an administrative law judge's (ALJ) findings and conclusion that the children were not entitled to a free education in the Township of Piscataway public schools, and directing that A.V. pay $8,830.08 in tuition reimbursement to the Board of Education of the Township of Piscataway (BOE).[1] We affirm.

I.

The BOE filed a complaint in the Law Division "alleg[ing] that, for several months during the 2010-[2011] school year, . . . A.V. and [S.V.] were 'not domiciled within [the Piscataway] school district,' but that their children attended its schools."[2] Piscataway Tp. Bd. of Educ. v. A.V., No. A-2991-12

---

[1] The Commissioner's final decision also ordered that S.V., who is A.V.'s wife and the children's mother, pay $8,830.08 in tuition reimbursement to the BOE. S.V. did not appeal from the Commissioner's final decision and has not participated in this appeal.

[2] In our prior decision, we refer to the mother of the children as "S.S." In the present matter, the children's mother is referred to as "S.V." We understand that although she is referred to by different initials in the two cases, S.S. and S.V. are the same person.

(App. Div. June 11, 2015) (slip op. at 1-2). The BOE sought tuition reimbursement under N.J.S.A. 18A:38-1(b)(2) for the children's "'ineligible attendance' in its schools." Id. at 2. The court held a bench trial, found A.V. and S.V. were not domiciled in Piscataway during a period the children attended schools in the district, and awarded the BOE damages. Id. at 10. We vacated the court's judgment and remanded to the Law Division for referral of "the matter to the Commissioner . . . for administrative adjudication on the issue of domicile, the issue of whether tuition is due, and, if tuition is due, the amount of tuition due." Id. at 18. Following our remand, the Law Division referred the matter to the Commissioner, who transmitted it to the Office of Administrative Law as a contested case.

An ALJ held a hearing over seven days, and issued a detailed written Initial Decision following the submission of post-hearing briefs. The ALJ noted the BOE presented the testimony of T.V.'s eighth grade teacher, Mary Juffey; school psychologist, Allyson Brown; the Piscataway school district's former director of student personnel services and current homeless liaison, Diane Janson; the district's past superintendent, Robert Copeland; and the district's current superintendent, Teresa Rafferty. A.V. testified, and he and S.V. also presented the following witnesses: the BOE's former supervisor of enrollment

and attendance, David Ford; and Bridgewater-Raritan Regional School District residency officer, Walter Kalicki.  Based on the testimony of the witnesses and documentary evidence presented at the hearing, the ALJ made detailed findings of fact.

The ALJ found that A.V. and his family began living in Piscataway "in or around 2006 and lived at various locations in the Piscataway school district prior to the 2010-2011 school year."  In May 2010, S.V. and her mother signed an "Affidavit of Residency of Student" which included a representation that S.V. "and her . . . children[,] N.V., T.V. . . . were residing at [S.V.'s] mother's home in Piscataway."[3]  The affidavit further stated S.V. understood it was her responsibility to inform the BOE of any change in residence.

The ALJ further found the evidence established that in the "spring of 2010," A.V. became employed as a superintendent of a housing complex in Raritan, which is outside of the Piscataway school district.  A.V. was permitted to reside in the housing complex as a condition of his employment, and he was

---

[3]  The affidavit also referenced S.V.'s third child, A.V., who shares the initials of appellant A.V. here.  We do not address any issues concerning S.V.'s third child because the ALJ did not recommend awarding any tuition reimbursement based on that child's attendance in the Piscataway school district, and the Commissioner did not order any tuition reimbursement based on that child's attendance at a district school.

provided a lease for an apartment in the complex with a term commencing on April 17, 2010 and ending on August 17, 2010. The lease identified S.V., N.V., and T.V. as residents of the apartment. The lease also included an addendum stating A.V. would occupy the premises "in connection with [his] employment" and providing "the apartment is provided to him as an incident to his employment." The ALJ noted that the lease and addendum were not signed.

The ALJ further found that A.V.'s employment was terminated in August 2010, and he was provided a notice to vacate the apartment. The record, however, established A.V. did not vacate the apartment until a landlord-tenant complaint was filed against him in October 2010. A subsequent warrant of removal directed that A.V. vacate the apartment by December 20, 2010.

The ALJ explained that during the 2010 school year, N.V. was in sixth grade, T.V. was in eighth grade, and they attended schools in the Piscataway school district. The ALJ also explained that by January 2011, A.V. and the children were domiciled in Piscataway. Thus, the ALJ found the issue presented was whether the children were domiciled in Piscataway during the period from the commencement of the school year on September 3 to December 21, 2010.

The ALJ recounted the testimony she found established N.V. and T.V. were not domiciled in Piscataway during the relevant period. Based on Juffey's

5

and Brown's testimony, the ALJ found that in December 2010, T.V. reported she was upset because her family was being evicted from the Raritan home in which they had been living. T.V. said the family had been living in Raritan because that is where her father, A.V., was employed. In response to T.V.'s report, Janson spoke with S.V., and recommended that S.V. contact Social Services in Somerset County for housing services because that is where Raritan is located. In response, S.V. did not say the family lived in Piscataway.

The ALJ further found Janson advised Ford about what she had learned because Ford conducted BOE investigations, which included interviewing homeless families within the district. The BOE subsequently informed S.V. in writing that she and A.V. owed tuition because S.V., N.V., and T.V. did not reside in the district from September 3, 2010, when school started, to December 21, 2010, when A.V., S.V., and the children were evicted from the Raritan apartment and returned to Piscataway.

The ALJ further noted Copeland's testimony that he had a telephone call with A.V. in the spring of 2011, during which A.V. raised "education issues" concerning his children. During the phone call, Copeland asked A.V. where he and his family were living during the fall of 2010, and A.V. said, "[y]eah, we weren't living [in Piscataway] then but that's beside the point." The ALJ further

found A.V. told Copeland "he lived in Raritan at that time" and that, "[b]ased on what [A.V.] told him during the conversation, Copeland understood that [A.V.] and his family were living in Raritan during the fall of 2010." Additionally, Rafferty testified she was present during Copeland's call with A.V., and A.V. said "we were living in Raritan at that time[,] but I really didn't want my kids to go to school in Raritan."

The ALJ further cited to Ford's testimony that in December 2010, Janson informed him T.V.'s family was homeless. Ford testified he was "really shocked" because S.V. had provided the May 2010 affidavit of residency stating that she and the children were residing in her mother's Piscataway home, and the family had not reported any change in address. Ford also testified he met with A.V. after being informed the family was homeless in December 2010, and A.V. said that he and S.V. had been residing in Raritan but the children had been living with S.V.'s mother in Piscataway. Ford informed A.V. that the children should have been enrolled in the Bridgewater-Raritan school district while A.V. and S.V. lived in Raritan because S.V.'s mother did not have guardianship of the children.

The ALJ detailed A.V.'s testimony that he became employed at the Raritan apartment complex in April 2010 and was later permitted to live in one of the

apartments with the children. A.V. testified the children lived with him in the apartment during the summer of 2010. According to A.V., he inquired about enrolling the children in the Bridgewater-Raritan school district, determined he could not provide the paperwork required to enroll the children in that district, and understood his children were ineligible to attend school in the district.

The ALJ found A.V. testified that the children returned to live with their grandmother in Piscataway in September 2010 and remained living there through December. According to A.V., following the termination of his employment, he left the Raritan apartment in December 2010, and he, S.V. and T.V. lived in a motel. The ALJ further detailed A.V.'s testimony concerning the places he and his family had resided while attending schools in the Piscataway school district prior to 2010, his interactions with Copeland and Ford, and his contention his children resided with S.V.'s mother in Piscataway during the fall of 2010 and resided with him in Raritan only during the summer of 2010.

The ALJ also recounted Kalicki's testimony refuting A.V.'s claim that Kalicki required that A.V. produce particular documents to enroll the children in the Bridgewater-Raritan school district. Kalicki testified his records showed A.V. contacted him only in March 2011, not during the summer of 2010, and

8

Kalicki had no recollection of ever speaking with A.V. in 2010 about the possible enrollment of A.V.'s children in the district.

After summarizing the testimony and evidence, the ALJ determined the "pivotal issue" was whether A.V.'s "two children were eligible to attend the Piscataway schools during the period of September 3 to December 21, 2010, pursuant to the statutory and regulatory requirements." The ALJ found A.V. bore the "burden of proof by a preponderance of the evidence that the [children are] eligible for a free education" under N.J.S.A. 18A:38-1(b)(2).

The ALJ found the BOE's witnesses credible, including Copeland and Rafferty with respect to their testimony concerning A.V.'s admissions that his family lived in Raritan during the fall of 2010. The ALJ also found A.V. was not a credible witness based on the inconsistencies in his testimony, including his conflicting accounts of his family's living arrangements, the conflicts between his testimony and other evidence and testimony the ALJ found credible, and the inconsistencies between his testimony and T.V.'s reports to Juffey and Brown. The ALJ further noted A.V. did not present any family members supporting his version of the events, and the two witnesses he presented, Ford and Kalicki, contradicted his version of the events.

 A-4113-19

The ALJ concluded A.V. failed to present credible evidence establishing N.V. and T.V. were eligible for a free education in the Piscataway school district during the period from September 3 to December 21, 2010. The ALJ determined the evidence established the children were not domiciled in Piscataway during that time. The ALJ found there was no credible evidence the family was homeless during that period because S.V. executed the affidavit of residency in May 2010 stating the children would reside with her and her mother in Piscataway, and the credible evidence established A.V. and the children lived in the Raritan apartment thereafter until the warrant for removal was effective on December 20, 2010. The ALJ determined the BOE is entitled to $8,830.08 in tuition reimbursement from A.V. based on a per diem rate of $61.32 for each child for the seventy-two school days between September 3 and December 21, 2010.

A.V. filed exceptions to the ALJ's decision. The Commissioner adopted the ALJ's findings, conclusions, and recommended decision, and determined A.V. failed to sustain his "burden of establishing that [his children] were domiciled in Piscataway from September to December 2010, for the reasons thoroughly detailed in the [ALJ's] Initial Decision." This appeal followed.

II.

We will reverse an agency's final decision only if there is a "'clear showing' that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record[.]" In re Pontoriero, 439 N.J. Super. 24, 34 (App. Div. 2015) (alteration in original) (quoting Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 9 (2009)). An action is arbitrary, capricious, or unreasonable if it (1) violates the law, including express or implied legislative policies, (2) is unsupported by substantial evidence in the record, or (3) "in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). "[W]e will 'intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy.'" Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 182 (App. Div. 2011) (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)).

Here, we consider A.V.'s claim the Commissioner erred by finding he failed to prove his children were entitled to a free public education in Piscataway. "Public schools shall be free to . . . persons over five and under

11

[twenty] years of age" who are "domiciled within the school district."  N.J.S.A. 18A:38-1(a).   "A child's domicile is normally that of his or her parents."  Somerville Bd. of Educ. v. Manville Bd. of Educ., 332 N.J. Super. 6, 12 (App. Div. 2000) (citations omitted), aff'd, 167 N.J. 155 (2001).

A student is deemed to be "domiciled in the school district when he or she is the child of a parent or guardian whose domicile is located within the school district."  N.J.A.C.  6A:22-3.1(a)(1).   A student who does not live with his parents may be deemed domiciled where the student is

> kept in the home of another person domiciled within the school district and is supported by such other person gratis as if he were such other person's own child, upon filing by such other person with the . . . board of education of the district, . . . a sworn statement that he is domiciled within the district and is supporting the child gratis and will assume all personal obligations for the child relative to school requirements and that he intends so to keep and support the child gratuitously for a longer time than merely through the school term . . . .
>
> [N.J.S.A. 18A:38-1(b)(1).]

When a board of education determines a child is not domiciled within the district, a parent or guardian may "contest the board's decision before the commissioner . . . and shall be entitled to an expedited hearing before the commissioner."   N.J.S.A.  18A:38-1(b)(2).   In the proceedings before the commissioner, the parent or guardian has "the burden of pro[ving] by a

preponderance of the evidence that the child is eligible for a free education." Ibid.

To satisfy that burden, A.V. was required to prove by a preponderance of the evidence that his children were domiciled in Piscataway from September 3, 2010, to December 21, 2010. Ibid. A domicile is legally defined as a permanent home from which a person does not intend to move. Lipman v. Rutgers-State Univ. of N.J., 329 N.J. Super. 433, 444 (App. Div. 2000). A person may have multiple residences, but they can only have one domicile, which is their permanent home. Somerville, 332 N.J. Super. at 12.

We have carefully reviewed the record and are satisfied that based on the ALJ's credibility determinations and findings of fact, which the Commissioner adopted, A.V. did not meet his burden. The evidence supports the Commissioner's determination that A.V.'s children were domiciled in Raritan during the fall of 2010 because they resided with A.V. in Raritan during that time. Indeed, T.V. said as much when she reported, in a manner consistent with the evidence showing the warrant of removal from the Raritan residence became effective on December 20, 2010, that her family had been evicted from their Raritan home. T.V.'s report is wholly inconsistent with A.V.'s testimony that the children were, at the time, residing with S.V.'s mother in Piscataway.

Moreover, A.V. admitted during the phone call with Copeland and Rafferty that his family lived with him in Raritan during the fall of 2010.

Against the substantial evidence A.V. and his children were domiciled in Raritan, A.V. did not present any evidence the Commissioner deemed credible establishing he or his children were domiciled in Piscataway during the first half of the 2010-2011 school year. He failed to produce any evidence that his children had a home in Piscataway that was a "true, fixed, permanent home and principal establishment, and to which, whenever [they were] absent, [they had] the intention of returning, and from which they had no present intention of moving." Kurilla v. Roth, 132 N.J.L. 213, 215 (Sup. Ct. 1944).

Additionally, although A.V. claimed the children lived with S.V.'s mother in Piscataway, he failed to introduce evidence S.V.'s mother filed a sworn statement with the BOE stating she was domiciled in Piscataway, she supported N.V. and T.V. gratis as if they were her own, and she assumed all personal obligations for them relative to their school requirements and intended to keep them for a period longer than the school year. See N.J.S.A. 18A:38-1(b)(1). Thus, there was no basis in the evidence for the Commissioner to conclude the children were domiciled with S.V.'s mother at her Piscataway home. Ibid.

In his pro se brief on appeal, A.V. argues the court erred by interpreting the evidence in a manner unfavorable to him. We reject his arguments because there is substantial credible evidence supporting the Commissioner's determination that he failed to prove his children were domiciled in Piscataway within the meaning of N.J.S.A. 18A:38-1 and N.J.A.C. 6A:22-3.1(a)(1) during the relevant time period. See Quest Acad., 216 N.J. at 385-86. Accordingly, A.V.'s children were not eligible for a free education in Piscataway for the seventy-two school days between September 3, 2010 to December 21, 2010, and the BOE is entitled to tuition reimbursement in the amount of $8,830.08.[4]

Any of A.V.'s arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] The Commissioner's determination of the tuition amount is supported by the evidence and is calculated in accordance with N.J.S.A. 18A:38-1(b)(2). A.V. does not contend otherwise.