**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5475-18

Y.Y., on behalf of minor
children, W.Y. and D.Y.,

     Petitioner-Appellant,

v.

BOARD OF EDUCATION
OF THE BOROUGH OF
NORTH ARLINGTON,
BERGEN COUNTY,

     Respondent-Respondent.

_____

         Argued April 12, 2021 – Decided October 13, 2021

         Before Judges Hoffman and Suter.

         On appeal from the New Jersey Commissioner of Education, Docket No. 149-5/16.

         Y.Y., appellant, argued the cause pro se.

         Eric L. Harrison argued the cause for respondent Board of Education of the Borough of North Arlington (Methfessel & Werbel, attorneys; Eric L. Harrison, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Commissioner of Education (Aimee Blenner, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Petitioner Y.Y. on behalf of her minor children, W.Y. and D.Y., appeals the July 8, 2019 Final Decision on Remand of the Commissioner of Education (the Commissioner), which adopted the Initial Decision by the administrative law judge (ALJ), dismissing petitioner's residency claim. The Commissioner found petitioner's children were not domiciled in North Arlington, Bergen County, and thus, were ineligible for a free education in those public schools. The Commissioner directed petitioner to reimburse the North Arlington Board of Education (Board) for tuition costs of $30,720.36. We affirm the Commissioner's final agency decision on the issue of domicile, finding it was not arbitrary, capricious, or unreasonable. However, we reverse and remand the tuition issue to the Commissioner.

I.

A.

On October 6, 2015, petitioner filed a pro se residency appeal with the Commissioner after the North Arlington School District (District) claimed her

children resided in Kearny, not in North Arlington. She learned her children would be disenrolled from attendance in North Arlington and she could owe tuition reimbursement. In a November 2, 2015 letter to her, the North Arlington Superintendent (the Superintendent) advised "based upon the information provided by the North Arlington Police Department that [D.Y.] and [W.Y.] were being transported to and from school from a residence located in Kearny." If she did not agree she could request a hearing before the Board in closed session and "your children will be entitled to continue their enrollment in the District, until the Board is able to review the appropriate evidence and make a determination regarding your children's residence." The letter advised if she were not successful in showing the children were eligible to attend school in North Arlington, she could be assessed tuition "for any period of ineligible attendance." The letter informed her of the approximate tuition rate per day for the schools the children attended.

Petitioner withdrew her pro se residency appeal. The Board conducted a hearing on December 14, 2015. At the hearing, petitioner provided her deed for the North Arlington property, one utility bill for October 2015, and a bank statement. She declined the Board's request to see the inside of her apartment in North Arlington, asserting it needed first to advise her on what it meant by

A-5475-18

domicile. A second hearing was scheduled for May 2, 2016, but petitioner left before the hearing started. On May 4, 2016, the Superintendent issued a Notice of Final Ineligibility advising petitioner the Board passed a resolution disenrolling her two children from the District based on its finding they were domiciled in Kearny rather than North Arlington.

On May 23, 2016, petitioner filed a second residency appeal with the Commissioner.[1] Although a motion for summary disposition by the District was granted by an ALJ, the Commissioner reversed, remanding petitioner's residency appeal to the Office of Administrative Law (OAL) for a hearing.[2]

B.

We glean the facts from the July 7, 2017 OAL hearing and the evidence from that proceeding.[3] Petitioner and her husband are the parents of two

---

[1] The record includes a May 23, 2016 letter from the Department of Education acknowledging that a "Petition of Appeal" was filed with the Commissioner on May 23, 2016. Petitioner's appeal itself was not included in the record.

[2] The record on appeal does not include the motion's order or the Commissioner's remand order.

[3] Contrary to Rule 2:5-4(a), petitioner included records in her appendix that were not part of the record before the Commissioner. These include petitioner's affidavit of July 19, 2017, an obituary, a notice dated May 11, 2017, photographs of an apartment, notes dated February 8, 9 and 17, 2015, and June 1, 2016, and an email between ADT and petitioner. We have not considered these records.

children, W.Y. and D.Y.  She and her husband purchased their home in Kearny in 2001.  Kearny is in Hudson County.  Petitioner's husband was considerably older than her and suffered from Lou Gehrig's disease.[4]  She separated from him in October 2013, because she and her husband had "a very different desire of life," and she wanted to do more activities.  Petitioner moved to an address in North Arlington, which is in Bergen County.

In June 2014, petitioner and a relative purchased a three-apartment building in North Arlington.  She testified she moved into the third-floor apartment in October 2014.  This is a small apartment with two bedrooms and one bathroom.  She testified her sons slept in one room and she in the other.

W.Y. attended the Bergen County Technical School (Bergen Tech), beginning in September 2014.  D.Y. attended a school in North Arlington.  Petitioner testified that W.Y. would stay most of the time in Kearny with her husband.  D.Y. also was in Kearny "very often" to play the piano there.  Petitioner testified her children would eat dinner on a regular basis in Kearny

---

See Townsend v. Pierre, 221 N.J. 36, 45 n.2 (2015) (providing based on Rule 2:5–4(a) that materials not provided to the trial court but presented on appeal for the first time would not be considered).

[4]  Petitioner's appellate brief advises her husband passed away in July 2019.

and then return to North Arlington for the night. Petitioner testified in 2014 to 2015, the children stayed with her in North Arlington during the weeknights.

Petitioner is a licensed health aide. She acknowledged spending a considerable amount of time at the Kearny home because of her husband's health conditions, especially after he had surgery in September 2015. She billed an insurance company for the care she provided him as his health aide.

To show her domicile was in North Arlington, petitioner introduced the deed to the North Arlington property, property tax bill, certificate of occupancy, PSEG gas bill, Verizon Fios bill, voter registration, home health aide license, W2 form and bank statements. However, on cross-examination she acknowledged writing a letter dated in February 2017 where she listed her return address as Kearny, rather than North Arlington. In the body of the letter, she referred to Kearny, as "home."

Detective Anthony Scala of the North Arlington Police Department testified that at the request of the District, he conducted two residency checks on September 16 and 17, 2015, at petitioner's North Arlington address, but she was not there. On September 17, 2015, he observed her at the Kearny address leaving with W.Y. Shortly after that at 7:40 a.m., he saw an older man at the Kearny address taking D.Y.to the middle school in North Arlington. Detective

6

Scala reported what he observed to the North Arlington Middle School principal, and then later to the Board. Detective Scala's report was placed in evidence without objection.

Harry Melber was an investigator for Check-M-Out Security Services & Investigations, LLC. He testified that on various dates and times early in the morning, on one day in October 2016, and eight days in May and June 2017, he made observations of petitioner's property in North Arlington and in Kearny. Petitioner was not at the North Arlington property. He observed her at the Kearny property with her children. On four occasions in the early morning, he observed petitioner drive W.Y. to Bergen Tech from the address in Kearny. He also observed petitioner drive D.Y. in the morning from Kearny to one of the schools in North Arlington. Melber took videos during his investigation. His report and photographs made from the videos were introduced as evidence by the District without objection from petitioner.

Carla Gomes, a process server for "Simply Status," testified that on June 20, 2017, she was not successful at serving a subpoena on petitioner at the North Arlington address. Later she spoke with petitioner's son and husband at the Kearny address, but her husband would not accept service. She went back to the North Arlington apartment and — after gaining entry to the building from

someone who was there — left a notice to contact her. Petitioner did not. Petitioner claimed Gomes' testimony was false about how she was able to enter the building.

The North Arlington School Business Administrator Board Secretary, Kathleen Marano, testified she learned about a possible residency violation by petitioner from a part-time employee, who also worked in Kearny. Marano notified the Superintendent. Petitioner had a hearing before the Board in December 2015, where she submitted some information about her residency, but not everything the Superintendent had requested.

Anita Gilmore was petitioner's next-door neighbor in Kearny since 2001. Her testimony revealed that she and petitioner were not on good terms. Gilmore learned that one of petitioner's sons was attending a school in North Arlington and notified a Board member. She claimed she saw petitioner "all the time" at the Kearny residence. There was "never" a time where petitioner stopped living next door in Kearny. However, Gilmore acknowledged there were periods of time when she was out-of-state.

Gilmore testified there were seven security cameras covering the perimeter of her house. She testified about ten different dates that her security camera captured activity at petitioner's Kearny property. The flash drive was

admitted into evidence.[5]  These showed petitioner doing yardwork and coming and going from the house in Kearny.[6]

## C.

The ALJ's initial decision on May 8, 2018, concluded there was no evidence the "two children ever left the domicile with their father in Kearny." Other than petitioner's testimony, the ALJ noted petitioner did not show evidence the children lived with her in North Arlington during the week. Petitioner would not allow the Board permission to visit the North Arlington apartment.  She admitted they spent a significant amount of time in Kearny because of her husband's health condition, internet access and the piano that was there.  The ALJ found it was not likely the family ate dinner in Kearny and the children then went to North Arlington for the night.  There was no one to corroborate petitioner's version of events.  The ALJ concluded the two children

---

[5]  There also are photographs that are in the District's appendix described as "photographs of petitioner's Kearny residence."

[6]  After the hearing, petitioner filed a motion to suppress the videotaped evidence from Gilmore.  She also claimed Detective Scala conducted an unlawful search, her driver's license and plate number were unlawfully seized, other videos were not authenticated, testimony by Gilmore and Gomes was false and Gomes "colluded" with the District's attorney.  There is a reference to this motion being denied, but we have not been provided with an order or decision.  The OAL record was closed on September 6, 2017, after the submission of closing briefs.

"were never domiciled in North Arlington and remained domiciliar[ies] of Kearny during the crucial time from September 2014 through the present." The ALJ concluded any payments to Bergen Tech for W.Y. were to be reimbursed by petitioner. The ALJ did not have enough information, at that time, to determine the cost of the tuition for D.Y.

Petitioner filed exceptions[7] to the Initial Decision alleging a lack of fact-finding by the ALJ, bias and false testimony by witnesses, the violation of her constitutional and statutory rights by the manner in which Scala and Melber's investigations were conducted and the ALJ's improper reliance on hearsay evidence and testimony. The exceptions included a listing of alleged constitutional violations but did not elaborate on how they applied.

On July 26, 2018, the Commissioner issued a Decision on Remand. The Commissioner summarized the issues raised by the petitioner and the District in their exceptions. The Commissioner "concur[red] with the ALJ's finding that petitioner failed to sustain her burden of establishing that she and her children were domiciled in North Arlington from the 2014-2015 school year to the present." The Commissioner also found sufficient evidence to support the ALJ's

---

[7] The District filed exceptions on the issue of tuition and a reply to petitioner. This is not in the appendix nor are petitioner's "reply exceptions."

finding that the "children remained domiciled in Kearny with their father." The Commissioner found "no basis . . . to disturb the ALJ's credibility assessments." It found the ALJ did not demonstrate bias or ignore any of the documents or explanations provided by petitioner. Rather, the ALJ found the other witnesses to be more credible, placing greater weight on that evidence. However, the record did not permit the Commissioner to "calculate the amount of tuition owed to the Board for D.Y.'s ineligible attendance." Further information also was needed about the tuition for W.Y. Thus, the Commissioner remanded the case to the OAL to calculate the tuition due to the Board and permitted supplementation of the record "as warranted." We denied petitioner's motion for leave to appeal on October 9, 2018, and dismissed the appeal as interlocutory.

The ALJ conducted an in-person hearing on February 14, 2019.[8] On May 23, 2019, the ALJ determined the amount of tuition owed by petitioner was $30,720.47. He found the supporting certifications[9] by the business manager for

---

[8] We have not been provided with a transcript of the February 14, 2019 in-person proceeding.

[9] Neither certification was included in the record on appeal.

the District and the business manager of Bergen Tech to be "accurate and creditable," allowing for two days of credit as agreed to by the District.

On July 8, 2019, the Commissioner issued the Final Decision on Remand, which adopted the ALJ's Initial Decision as final and dismissed petitioner's residency claim. Petitioner was directed to reimburse the Board for tuition costs of $30,720.36[10] for the time W.Y. and D.Y. were ineligible to attend school in North Arlington. Petitioner appealed.

On appeal, petitioner raises the following issues:

I. THE AGENCY ERRED IN ACCEPTING ALJ'S DETERMINATION THAT PETITIONER WAS NOT DOMICILED IN NORTH ARLINGTON

    A. THE AGENCY SHOULD REJECT ALJ'S INITIAL DECISION . . . THAT IT LACKS FACT FINDING

    B. PETITIONER HAD PRESENTED PREPONDERANCE EVIDENCE SUPPORTING HER DOMICILE OF NORTH ARLINGTON

    C. AGENCY'S DECISION IS ARBITRARY, CAPRICIOUS AND UNREASONABLE

II. THE AGENCY ERRED IN ORDERING PETITIONER TO REIMBURSE TUITION TO

---

[10] The eleven-cent difference was attributable to "a difference in rounding of the daily tuition cost."

RESPONDENT

III. PETITIONER'S AND HER CHILDREN'S RIGHTS HAD BEEN VIOLATED

A. Petitioner's and D.Y.'s Right of Due Process.

B. Petitioner's Rights of Parenting Her Children

C. Petitioner's Right to Choose her Domicile

D. Petitioner's Constitutional Protected Rights as a Homeowner

E. Petitioner's Constitutional Protection Right of Equal Protection (Not Raised Below)

IV. ALJ ERRED IN ADMITTING THE FRAUDULENT EVIDENCE, AND PERJURED TESTIMONIES AND EVIDENCE VIA ILLEGAL SEARCH

A. The Video Evidence and Printouts from These videos Admitted by ALJ are Hearsay, Therefore Should Have Been Suppressed.

B. Some of the Video Recordings are Fraudulent and Their Printout are Fraudulent

C. Malicious Perjury by Respondent's Witnesses

D.  ALJ Erred in Accepting Evidence of
Illegal Search

V.  AGENCY ERRED IN TUITION
REIMBURSEMENT CALCULATION
(Not Raised Below)

II.

A.

The scope of our review in an appeal from a final decision of an administrative agency is limited.  Russo v. Bd. of Trs., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)).  The agency's decision should be upheld unless there is a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Ibid. (quoting Herrmann, 192 N.J. at 27-28).  "[A]n appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence."  In re Application of Virtua-West Jersey Hosp. Voorhees For A Certificate of Need, 194 N.J. 413, 422 (2008).

An action is arbitrary, capricious, or unreasonable if it (1) violates the law, including express or implied legislative policies, (2) is unsupported by substantial evidence in the record, or (3) "in applying the legislative policies to

14                                                                      A-5475-18

the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).

We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-West Jersey Hosp., 194 N.J. at 422). However, we are not bound by the "agency's interpretation of a statute or its determination of a strictly legal issue." McClain v. Bd. of Rev., Dep't of Labor, 451 N.J. Super. 461, 467 (App. Div. 2017) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Petitioner alleges the Commissioner erred by adopting the ALJ's finding that the children's domicile was in Kearny not North Arlington. She argues the ALJ did not make appropriate findings of fact, the decision was against the weight of the evidence and was arbitrary and capricious.

N.J.S.A. 18A:38-1(a) provides that every person in New Jersey between the ages of five and twenty is entitled to a free education if they are "domiciled within the school district." "Domicile" means a permanent home from which a person does not intend to move. Lipman v. Rutgers-State Univ. of N.J., 329 N.J.

Super. 433, 444 (App. Div. 2000). Although a person may have multiple residences, he or she can only have one domicile. Somerville Bd. of Educ. v. Manville Bd. of Educ., 332 N.J. Super. 6, 12 (App. Div. 2000). A child's domicile is normally that of his parents. Roxbury Twp. Bd. of Educ. v. West Milford Bd. of Educ., 283 N.J. Super. 505, 521-22 (App. Div. 1995). If separated parents live in different school districts, "the student's domicile is the school district of the parent or guardian with whom the student lives for the majority of the school year," regardless of the parents' custody arrangement. N.J.A.C. 6A:22-3.1(a)(1)(i).

It is "the totality of information and documentation offered by an applicant" that informs the district's decision. N.J.A.C. 6A:22-3.4(c). Factors to consider include "the physical characteristics of each [place], the time spent and the things done in each place, the other persons found there, the person's mental attitude toward each place, and whether there is or is not an intention, when absent, to return." Mercadante v. City of Paterson, 111 N.J. Super 35, 39-40 (Ch. Div. 1970).

A school district may seek a child's disenrollment from its schools and seek tuition reimbursement if a child is attending but domiciled in another district. N.J.S.A. 18A:38-1(b)(2). The parents or legal guardian of the child are

entitled to a hearing where they have the burden of proving domicile by a preponderance of the evidence.  Ibid.

We agree that the Commissioner's decision was supported by substantial credible evidence taking into consideration all of the information and documentation by the parties.  The Commissioner specifically relied on

> the September 2015 surveillance that showed petitioner leave the Kearny address with W.Y., followed by a man leaving with D.Y. and dropping him off at school in North Arlington; the October 2016 surveillance that showed petitioner leaving the Kearny address with W.Y. and dropping him off at Bergen Tech; and the surveillance conducted over several dates in May and June 2017 that showed petitioner leaving the Kearny address on four occasions and driving W.Y. to Bergen Tech.

It was Detective Scala's testimony that explained the residency checks over a two-day period in September 2015.  He testified that on both dates, petitioner's children were not present at her North Arlington home, but rather, were in Kearny.  It was Melber's investigation that in October 2016 and on several dates in May and June 2017, showed petitioner drive W.Y. to Bergen Tech from the Kearny home and then drive D.Y. to school from Kearny.  Melber did not find petitioner at the North Arlington address.  He testified about what he observed, and about his report that documented those observations in photographs made from videos.

17

Petitioner's own testimony showed the extent the children were in Kearny. She testified W.Y. stayed in Kearny with her husband. She testified that W.Y. "came to North Arlington sometime but not all the time." Once the younger son, D.Y., was not able to attend school in North Arlington, he too spent "a lot of time in Kearny, sleeping in Kearny." D.Y. would go to Kearny "very often" to play the piano. She used the internet at the Kearny home at times and was present in Kearny to care for her husband's medical needs. Petitioner testified the children would eat dinner in Kearny and leave during the weeknights to stay in North Arlington, but the ALJ found this was unlikely.

The ALJ concluded petitioner and the children had "at least two residences." However, he also found that "[b]e it piano, the internet access, or the need for her nursing skills for her husband it is apparent that much more time was spent in Kearny than in North Arlington" and that the children were domiciled with their father at the Kearny address. The Commissioner adopted this finding. Our careful review of the record shows there was substantial, credible evidence for that finding.

Petitioner claims the ALJ erred by admitting videotapes and printouts from them into evidence because they were false and lacked authenticity. "[O]rdinarily, an evidentiary determination made during trial is entitled to

18

deference and is to be reversed only on a finding of an abuse of discretion . . . ." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374 (2010). Rulings on evidence "must stand unless it can be shown that the trial court palpably abused its discretion." State v. Carter, 91 N.J. 86, 106 (1982). Under the abuse of discretion standard of review, reversal is only appropriate in cases where the trial court's finding was "so wide of the mark that a manifest denial of justice resulted." Ibid.

In New Jersey, "[a]uthentication of a videotape is similar to the authentication of a photograph." State v. Brown, 463 N.J. Super. 33, 52 (App. Div. 2020) (citing State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996)). The videotape must be "an accurate reproduction of that which it purports to represent and the reproduction is of the scene at the time the incident took place." Ibid. (citing State v. Wilson, 135 N.J. 4, 15 (1994)). "The photographer or videographer need not testify." Ibid. Thus, "any person with the requisite knowledge of the facts represented in the photograph or videotape may authenticate it." Wilson, 135 N.J. at 14.

Melber testified about what he observed and then documented in his report with photographs from the videos. Petitioner did not object to his report's admission in evidence with the photographs. Gilmore testified that photographs

made from the flash drive by her grandson were of the side of her house. She was able to identify petitioner and family members in the videos.[11] We discern no abuse of discretion by the ALJ or Commissioner on this issue. Petitioner's citation to cases from North Carolina about authentication and chain of custody are not controlling or persuasive here.

Petitioner claims Gomes was lying about how she gained access to the third-floor apartment door in North Arlington, and that she was colluding with the District's attorney. In response to petitioner's allegations, the Commissioner noted the ALJ had the opportunity to assess the credibility of the witnesses who testified. The Commissioner found no basis to disturb the ALJ's findings in that regard. Our review of the hearing record does not differ from the Commissioner's, namely that we defer to the ALJ's findings because he had the ability to see and hear the witnesses. See State v. Locurto, 157 N.J. 463, 474 (1999) (providing that "[a]ppellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the

---

[11] Petitioner contends that Gilmore's videos were fraudulent based on an email from ADT dated July 26, 2016, but that email was never admitted into evidence at the July 2017 hearing.

character and demeanor of witnesses and common human experience that are not transmitted by the record.").

Petitioner alleges evidence provided by Detective Scala was obtained through an illegal search and should be suppressed on grounds that he violated her Fourth Amendment rights by conducting a search for her motor vehicle information without probable cause or consent. We disagree with this argument. "[E]vidence illegally obtained in violation of the Constitution is generally deemed inadmissible only in a criminal prosecution and only because of the illegal conduct of government officials." Tartaglia v. Paine Webber, 350 N.J. Super. 142, 148 (App. Div. 2002). This appeal involves an administrative and not a criminal proceeding. Moreover, N.J.S.A. 18A:38-1.3 authorizes a school district to request information from the Motor Vehicles Commission where there is a dispute between a district and parent about eligibility to enroll a student. On this record, we discern no abuse of discretion.

Petitioner raises other issues that were not part of the residency appeal to the Commissioner. Determining where the children were domiciled did not involve petitioner's right to parent her children, the right to choose her domicile, or her rights as a property owner. After carefully reviewing the record and the applicable legal principles, we conclude that petitioner's arguments on these

21

issues are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Petitioner's equal protection clause claim was raised for the first time on appeal.  Generally, an appellate court will not consider issues that were not raised previously, including constitutional issues.  See Deerfield Ests., Inc. v. Twp. of E. Brunswick, 60 N.J. 115, 120 (1972) (providing that constitutional issues that were not raised and argued below will not be considered unless raising a question of jurisdiction or "present[ing] a matter of real public importance").  We will not exercise our original jurisdiction to consider this claim.

Petitioner claims she and her children's due process rights were violated.  However, the Superintendent's November 2, 2015 letter outlined the procedures and appeal rights for the hearing which commenced in December 2015.  The Superintendent issued a Notice of Final Ineligibility on May 4, 2016.  That Notice also advised petitioner of her appeal rights.  Petitioner appealed to the Commissioner and she was afforded a contested case hearing in the OAL.  The record shows that petitioner was provided notice and an opportunity to be heard, which satisfied procedural due process concerns.  See Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001) (providing "[t]he minimum

requirements of due process of law are notice and an opportunity to be heard[,] . . . mean[ing] an opportunity to be heard at a meaningful time and in a meaningful manner." (citing Doe v. Poritz, 142 N.J. 1, 106 (1995))).

B.

A school district may seek tuition reimbursement where a student attended but was not domiciled in the district. N.J.S.A. 18A:38-1(b)(2). The Commissioner's computation of tuition, "shall be . . . on the basis of 1/180 of the total annual per pupil cost to the local district multiplied by the number of days of ineligible attendance and shall be collected in the manner in which orders of the [C]ommissioner are enforced." Ibid. However, tuition may only be assessed for the period during which the hearing was pending "and for up to one year of a student's ineligible attendance in a school district prior to the appeal's filing and including the [twenty-one]-day period to file an appeal." N.J.A.C. 6A:22-6.2(a).

Petitioner contends that reimbursement should be calculated starting September 22, 2015, around the time D.Y. was removed from school, and that she should not have to pay for the 2014-2015 school year for D.Y. or W.Y.[12]

_____

[12] The Commissioner found that D.Y. attended school for thirty and a half days from May 4, 2015, through the end of 2014-2015, at a rate of $60.24 per day;

23                                                        A-5475-18

The Commissioner used May 4, 2015, to start the date for tuition reimbursement because this was twelve months before the Superintendent's May 4, 2016 Notice of Ineligibility decision. Under N.J.A.C. 6A:22-6.2(a), the District could only assess petitioner for a year prior to the Superintendent's May 4, 2016 notice of final ineligibility.

Although we agree that the regulation provides a twelve-month limitation, the state of this record is such that we are not able to determine whether the tuition assessment is sustainable on appeal. Neither party provided a transcript of the in-person hearing on February 14, 2019, nor copies of the certifications that apparently detail how the tuition was calculated. All that we have is the Commissioner's summary of the attendance dates and amounts due without an explanation of the hourly rates.

Petitioner also alleges that D.Y. was disenrolled beginning in September 2015 but that the Superintendent's letter about the residency hearing was not provided until November 2, 2015. She claims she home schooled D.Y. in September 2015 for the remainder of the year. The Commissioner did not

___

and eight days in 2015-2016 at a rate of $68.28 per day. For W.Y., the cost of tuition at Bergen Tech was $47.60 per day for thirty-three days from May 4, 2015, to the end of the 2014-2015 school year; $8730 for the 2015-2016 school year; $8910 for the 2016-2017 school year; and $9126 for the 2017-2018 school year.

address petitioner's argument about the period from September 2015 to November 2015.  Although this would not affect the domicile issue, it is not clear if this would affect the tuition calculation either in amount or duration, or even if this disenrollment occurred as alleged.  For this reason, we reverse and remand the tuition issue to the Commissioner for factual findings regarding the tuition and consideration of petitioner's arguments about the September 2015 disenrollment of D.Y.

Affirmed in part and reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5475-18